## Dickerson, et al. v. Snyder, Administrator of the Estate of J. R. Russell, Deceased.

(Decided May 22, 1925.)

## Appeal from Oldham Circuit Court.

1. Gifts—Thing in Esse and Delivery Necessary to Both Gift Inter Vivos or Causa Mortis.—In both gifts inter vivos and gifts causa mortis, there must be a thing in esse and a delivery of it to donee or his agent, which may be symbolical or constructive, and in case of gift inter vivos, when delivery is accompanied with an intention to transfer property, gift is completed, and donee becomes vested with an irrevocable title, as between himself and donor.

2. Gifts—Essentials of "Gift Causa Mortis" Stated.—Gifts causa mortis must always be of personal property and made in expectation of imminent death from impending disease or peril with implied right of donor to revoke it at any time before his death, or by recovery from impending affliction or peril.

3. Gifts—Donee's Title Under Gift Causa Mortis Defeasible, While Absolute Under Gift Inter Vivos.—The title obtained by donee under gift causa mortis is defeasible or conditional, while donee's title under gift inter vivos becomes absolute on delivery.

4. Gifts—Delivery of Checks Drawn by Donor on Funds in Bank Not Sufficient to Constitute Gift Causa Mortis.—Under Kentucky Statutes, section 3720b, subsection 189, a check not being an assignment pro tanto or otherwise of funds against which it is drawn, delivery by alleged donor of checks is not sufficient to constitute completed gift causa mortis.

5. Gifts—Trusts—Delivery of Checks Without Funds Subject Thereto Held Not to Constitute Gift Causa Mortis or Trust.—Where alleged donor, at time of delivery of checks to another in favor of alleged donees, had no funds in bank subject to check, and acquired none prior to his death, held, that there not being a thing

in esse as subject matter of gift, a gift causa mortis or trust was not created.

WALTER P. LINCOLN and EDWARDS, OGDEN & PEAK for appellants.

J. BALLARD CLARK and R. T. & W. J. CROWE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Claiming that the hereinafter mentioned transaction created a debt against the estate of J. R. Russell, deceased, appellants and plaintiffs below, Rebecca Dickerson, William Johnson and William Butler, all colored, brought this action in the Oldham circuit court against appellee and defendant below, R. H. Snyder, Russell's personal representative, to recover the amount of three checks issued by the deceased on January 23, 1922, on the bank of Prospect, Kentucky, with which deceased theretofore had an account on deposit. The check to plaintiff, Dickerson, was for $800.00 and the ones to the other two plaintiffs were for less sums. They were proven as required by law and payment demanded of the personal representative, which he refused followed by this suit on the part of plaintiffs to recover judgments therefor. The answer alleged in its first paragraph a want of knowledge or information sufficient to form a belief as to the material facts averred. The second paragraph averred that neither on January 23, 1922, the date of the checks, nor at the time of decedent's death on February 10 following, nor at any intervening time did decedent have any money on deposit to his credit with the bank upon which the checks were drawn, all of which was agreed to by a stipulation upon the trial of the case. After proof heard the cause was submitted to the court without the intervention of a jury (the misjoinder of plaintiffs being expressly waived), followed by a judgment dismissing the petition and complaining of it plaintiffs prosecute this appeal.

The trial developed the following facts upon which plaintiffs rely to sustain their right of recovery: The deceased, J. R. Russell, was a widower at the date he signed the checks sued on and had been for more than twelve months. No children were born to him and his deceased wife, and the only blood relative surviving him was a brother, who also had no children. For quite a while before the death of Mr. and Mrs. Russell they were

each afflicted with lingering ailments rendering them invalids. Each of the plaintiffs was a servant in their household and had been for twelve years or more. Their faithful services, for which they were paid the agreed wages, seems to have attached them to Mr. Russell. At the time of Mrs. Russell's death her sister, who was then living in Memphis, Tenn., Mrs. W. R. Johnston, came to the home of decedent and remained there until after his death as a sort of housekeeper. At the date of the checks Mr. Russell had been moved to an infirmary in the city of Louisville for the purpose of undergoing a major operation in the hope of restoring his health, but the results of which were extremely doubtful. Just before submitting himself to the surgeon, he suggested in substance to Mrs. Johnston that he wanted her to write the checks, which she did, dating them on that day and he signed them. At the same time he caused her to write, and which he also signed, a letter to E. G. Hoagland, cashier of the bank upon which the checks were drawn and which, omitting date, address and signature was: "In view of the fact that I have been delayed in making a new will, being administrator of the estate of my wife, Florence Woolfork Russell, I am making (3) three checks that I want paid out of the first money that is paid out," and then named the checks and amount and to whom payable, and caused Mrs. Johnston to seal the letter with the checks in an envelope addressed to the cashier with instructions to her that she keep the package and deliver it to Hoagland after his death which occurred on February 10, 1922. The witness (Mrs. Johnston) also stated that her understanding was "that he (decedent) intended to cover these matters by his will in the event of his recovery or as soon as he felt physically able to do so."

Learned counsel for plaintiffs with much force and research argue that the above facts constitute a completed gift *causa mortis* and contain every element of such a gift, although their petition, as we read it, is not technically bottomed upon a donee's title under such a gift, but rather upon the theory that the transaction as outlined created a debt against the decedent's estate, recoverable by this action against his personal representative. However, in disposing of the case, we will follow the course of defendant's counsel by waiving the technicality as he has done, if it exists, and determine the case upon its merits. In doing so it will not be necessary to write an exhaustive and detailed treatise on the law of gifts, either

those *inter vivos* or those *causa mortis*. We will, there-
fore, content ourselves with stating only such fundamen-
tal and universally recognized elements of *causa mortis*
gifts as are necessary for the determination of the ques-
tions raised.

In both kinds of gifts there must be a thing *in esse*
as the subject matter of the gift and there must be a de-
livery of it by the donor to the donee, but such delivery
may be to an agent of the donee, and where the circum-
stances are such that the given property can not be phy-
sically delivered, it may be done so symbolically or con-
structively. A frequent illustration of the latter char-
acter of delivery is where the given property is not in
the immediate presence of the donor and its nonaccessi-
bility prevents him from transferring its custody from
himself to the donee or his selected representative or
agent, in which case the donor must deliver to the donee
or his agent something to symbolize the corporeal prop-
erty which is the subject matter of the gift, and which
frequently is a key to some sort of receptacle in which
the property is kept and wherein it was contained at the
time. Upon the completion of the above acts on the part
of the donor, accompanied with an intention on his part
to transfer the property to the donee, an *inter vivos* gift
is completed and the donee becomes vested with an irre-
vocable title as between him and the donor but subject,
of course, to superior equities of third parties who are
strangers to the gift.

Additional elements are necessary for the acquisi-
tion of an absolute title to the donee under a *causa mortis*
gift, which are: That the gift must always be personal
property and made or done in expectation of imminent
death from a disease or peril then impending with the
implied or attached right of the donor to revoke it at any
time before his death, or by recovering from the im-
pending affliction or peril. In other words, a *causa
mortis* gift is always upon the implied condition that the
donor has the right to revoke it and that unless he dies
as a result of the impending peril without previous re-
vocation the donee will not obtain title. So that, the title
obtained by the donee under such gifts at the time of the
actual or symbolized delivery is defeasible or conditional
subject to be defeated by the occurrence of any of the
matters we have stated; whilst the donee's title under
an *inter vivos* gift becomes absolute upon such a delivery.

There is no dissent by any court or text writer from the foregoing statements of the law and we will cite only 28 C. J. 684, par. 92, 687 par. 97; 12 R. C. L. 955, par. 30, and 957, par. 33; Drake v. Security Trust Co., 203 Ky. 733; Moore v. Shifflett, 187 Ky. 7; Webber v. Salisbury, 149 Ky. 327; Foxworthy v. Adams, 136 Ky. 403; Stark v. Kelley, 132 Ky. 376; McCoy v. McCoy, 126 Ky. 783, and many other domestic cases cited in those opinions.

Learned counsel for plaintiffs admits the law to be as above outlined, but insists that the delivery of the *checks* sued on in this case to Mrs. Johnston constituted her an agent of the plaintiffs, the donees, and was a symbolical delivery and fully complied with the above essential elements to create a *causa mortis* gift, and, since the donor died as a result of the impending peril without revoking the gifts they became absolute, and he makes a most forceful argument in support of that position. But in doing so he is compelled to and does further admit that the great body of the law is against his contention and holds that the delivery of a check drawn on a fund in bank is not sufficient to vest any sort of title in the donee to the fund or any part of it, which almost universal holding by courts generally seems to be bottomed upon the fact that a check is not an assignment, *pro tanto* or otherwise of the fund against which it is drawn. To obviate that reasoning we are cited by counsel to the case of Lester v. Given, Jones & Co., 8 Bush 357, holding that a check is an assignment "of such funds of the drawer to the amount of the check, which assignment is complete as between the drawer and payee when the check is given, and complete as between payee or holder and the bank when the check is presented for payment." And such seems to have been the holding of this court, although contrary to the great weight of authority, prior to the enactment of our present negotiable instruments act, which is section 3720b of our present Kentucky Statutes, and its various subsections. Subsection 189 of that section expressly provides that, "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it certifies the check." But, however that may be, a number of the domestic cases, *supra,* particularly the Foxworthy one, seem to hold that delivery by the donor, of either kind of gift, of *his own* obligation is not sufficient to complete the gift, there being a difference recog-

nized in the law between the delivery of the donor's own obligation and that of a third person of which he is the owner. It is true that in this case we are dealing exclusively with *causa mortis* gifts, but the necessary facts to create the essential element of *delivery* in both classes of gifts seems to be practically the same and in the case of Graf v. Graf, 150 Ky. 226, we held that the delivery to the donee in person of the donor's obligation in the form of a note for $1,000.00 was not sufficient to create an *inter vivos* gift. Learned counsel also cite and rely on the cases of Williams v. Guile, 6 L. R. A. 366; Newcomb v. Cabell, 10 Bush 460; Kemper v. Kemper, 1 Duv. 401; Turpin v. Thompson, 2 Met. 420, the McCoy case, *supra,* and perhaps others; but in each of them the subject matter of the gift was *not* the donor's personal obligation, but that of some third person, the title to which he owned, and he delivered it either actually or symbolically to the donee. Likewise the case of Stevenson v. King, 81 Ky. 425, was where the donor delivered the key to a desk containing the property which was the subject matter of the gift. The facts in all those cases are clearly differentiated from those we are now dealing with. The *one* case relied on by plaintiffs' counsel most nearly approaching the facts here involved is that of Varley v. Sims, a Minnesota case, reported in 8 L. R. A. (N. S.) 828; but a reading of that opinion will show that the facts are not entirely similar and it is one of the few cases which seems to run counter to the great weight of authority.

If, however, the foregoing reason for denying the recovery in this case did not exist, and if it should be conceded that the transaction relied on was otherwise sufficient to create a valid *causa mortis* gift, still the judgment was correct and should be affirmed, because neither at the time of the drawing of the checks nor at the time of decedent's death was there any money in the bank subject to the donor's check. We have hereinbefore said that only personal property was capable of being transferred by a *causa mortis* gift and that there could not be a gift, especially of that character, of something having no existence. In other words, such a gift is one *in specie* and the property must have a corporeal or tangible existence, or if a chose in action the particular chose must be delivered, or the act of delivery be sufficient to carve out from the whole the particular portion to be given; for, as said in the text of 28 C. J. 644, "The subject of

the gift must be definite and certain. The property must be *in esse* at the time of the attempted donation." And the same is in substance said in the text of 12 R. C. L. 938 thus: "Services and property may be the subject of gifts *inter vivos*, but the subject of the gift must be certain." Here the decedent, Russell, did not attempt to create after his death a debt against his estate, but only attempted to give the designated amounts of the checks out of funds represented by his deposit account with the bank on which the checks were drawn. He neither had such an account in that bank at the time the checks were drawn, nor at the time of his death, or at any intervening time, and when he died there was in existence no subject matter to which the intended gift could attach or the title to which would become absolute in the donee. The Drake case, *supra*, is also in point.

We, therefore, conclude that, independently of any other obstruction in the way of plaintiffs' recovery, the latter fact is conclusive against their right to do so, either upon the theory of a *causa mortis* gift, or upon the theory of the creation of a trust in their favor, since if for no other reason there was no designated property or fund to which the trust could attach. Drake v. Security Trust Co., *supra*.

Wherefore, the judgment is affirmed.