## Turpin's Administrator v. Stringer.

(Decided February 15, 1929.)

C. L. TARTER and WESLEY & SON for appellant.

W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Sol Turpin, an aged bachelor, died a resident of Pulaski county in 1926, and the appellant and plaintiff below, Dan Lynch, was duly appointed and qualified as administrator of his estate. Plaintiff filed this ordinary action in the Pulaski circuit court against appellee and defendant below, Andy Stringer, to recover judgment from him for $2,376 the aggregate amount of United States pension checks charged in the petition to have been issued to the decedent and collected by defendant

and appropriated by him to his own use. The monthly pension check amounted to $72.00, and it was averred in the petition that defendant had collected and converted the proceeds of 33 of them. The answer denied the material averments of the petition, except it was admitted that defendant had appropriated for board, raiment, and medicine for the use and benefit of the deceased proceeds thereof to the amount of $60 per month for 33 months. Defendant then counterclaimed against plaintiff for $100 per month for the 33 months, less the $60 per month that he admitted having received from the pension checks, it being further averred that the services for which recovery was sought, which included nursing, board, etc., was not only worth $100 per month for the time involved, but that deceased had agreed and promised to pay plaintiff the value thereof, which was that sum. Another paragraph of the answer sought recovery against plaintiff for the additional sum of $2,293.70, being the amount of a deposit account of decedent in the First National Bank of Somerset at the time of his death and which defendant averred was made by deceased, "with written instructions entered on the deposit records therein (the bank) that, if anything should happen to him, or he should die, that said sum was to be paid to this defendant, Andy Stringer." He then alleged that the deposit remained in the bank with such alleged instructions until the death of the deceased, and that after plaintiff's appointment as administrator he appropriated and distributed it as a part of decedent's estate. One of the averments in the petition was that decedent, on the 6th day of June, 1923, by an inquest held in the county court and presided over by the county judge of the county, was found to be mentally and physically incompetent to manage his estate, and that the court appointed the First National Bank of Somerset as his committee, and it executed bond and qualified as such. The purpose of that allegation in the petition is not altogether clear, but probably it was inserted for the purpose of showing the absence of authority and right of the defendant to collect the pension checks, since it was probably in the mind of the pleader that such authority and right existed only in the appointed committee. But, whatever the purpose, the answer denied the legality of that proceeding, because it was one in the county court and held at a time when the Pulaski circuit court was in session, and that, under the provisions of section 272a15 of the

1922 Edition of Carroll's Kentucky Statutes, county courts are without jurisdiction to entertain and conduct such a proceeding when a circuit court "is in session in the county."

The reply controverted the material allegations of each counterclaim, and also the invalidity of the inquest, and in another paragraph averred facts that counsel insists constituted an estoppel against defendant from asserting ownership of the bank deposit account. A rejoinder put in issue that paragraph of the reply, and, upon trial before a jury, under the instructions of the court, there was a verdict in favor of defendant for the full amount of his two counterclaims, followed by a judgment against plaintiff individually for the sum of $2,977.37, and, to reverse it he prosecutes this appeal. The court instructed the jury to find for plaintiff $2,376, and then to find for defendant reasonable compensation for boarding, caring for, and nursing deceased for the period claimed, not to exceed $3,300, and No. 3 said: "You will also find for the defendant, Andy Stringer, $2,293.70, the amount of bank account directed to be paid by the First National Bank to said Stringer in the event of Sol Turpin's death." Various errors are urged by counsel for appellant as grounds for reversing the judgment the material ones of which will be discussed and determined as the opinion proceeds.

It was proven without contradiction that defendant and his brother, Hawk Stringer, were illegitimate children of the deceased and that each of them and the deceased recognized such natural relationship. Defendant bases his right of recovery on his first counterclaim, i. e., for nursing, boarding, taking care of and looking after the deceased, upon two theories: (a) An express contract of the deceased to pay him therefor; and (b) an implied contract arising from decedent's mental incapacity to enter into an express one. Perhaps the two under some circumstances would be inconsistent, but in view of the fact that the express contract, as claimed, was entered into before the alleged inquest and at a time when decedent was mentally capacitated to contract, and in view of the further fact that if the inquest was void, then decedent's mental incapacity was a fact to be proven, and, if disproven, reliance might be had on the express contract, we conclude that it was competent for defendant in his counterclaim to rely on both theories in support thereof.

The court in its instructions submitted neither theory (a) nor theory (b), and peremptorily instructed the jury in instruction No. 3, supra, to find for defendant the amount of his second counterclaim, being the amount of decedent's deposit in the First National Bank at the time of his death, and which instruction could be supported by no legal ground except (c) that the alleged instructions to the bank operated as a valid inter vivos gift of the deposit to defendant, or (d) that it was in legal effect a testamentary devise. The court by its instruction (No. 2) given to the jury assumed as a matter of law that defendant was entitled to recover on his first counterclaim under either his theory (a) or (b), without submitting the facts upon which either of them could be supported. In other words, it peremptorily told the jury to find for defendant on the counterclaim the reasonable value of the services rendered by him, and which, of course, was and is manifestly erroneous even if there had been sufficient evidence to submit theory (a), which, as we have shown was based upon an express contract.

We have carefully read the evidence and find nothing therein to support that theory. Various witnesses testified that decedent upon occasions before his death told them, in substance, that he wanted defendant to be paid for the services he was receiving at his hands, and some of them went further and stated that he also said that he wanted defendant to have his property at his death; but all of them expressly stated that he did not say that he had agreed to pay him for the services; nor is there any proven fact or circumstance in the case from which any express contract could reasonably be inferred.

We have hereinbefore seen that decedent was the natural parent of defendant and they appear from the record to have resided in the same household, but whether it was that of decedent or defendant the record does not disclose. We have heretofore had before us analogous facts in similar cases and we have uniformly held that where the evidence went no further than as above recited a recovery on an express contract could not be had. Some of the cases so holding are Newton's Ex'r v. Field, 98 Ky. 186, 32 S. W. 623, 17 Ky. Law Rep. 769; Price v. Price's Ex'r, 101 Ky. 28, 39 S. W. 429, 19 Ky. Law Rep. 211; Dowell v. Dowell's Adm'r, 137 Ky. 167, 125 S. W. 283; Benge's Adm'r v. Fouts, 174 Ky. 654, 192 S. W. 703; Broughton v. Broughton, 203 Ky. 692, 262 S. W.

1089; and De Fever's Ex'r v. Brooks, 203 Ky. 606, 262 S. W. 976. The principle was fully recognized in the last-cited case, but a recovery was allowed therein because the facts were found to be sufficient to sustain the express contract. Those cases announce the principle that the proof, to establish an express contract in such cases, should be clear and convincing, since otherwise the door would be opened for the perpetration of frauds against the estates of decedents, and who are not present to combat them. The court, therefore, under the evidence as disclosed by the record before us, should have peremptorily instructed the jury to find against the right of defendant to recover under theory (a) on an express contract with decedent.

In the case of Combs v. Beatty, 3 Bush 613, it was held by this court that if one receiving such services was mentally incapacitated to contract, then the law would raise an implied one for compensating the one who performed them, and under the doctrine of that case, which is in accord with the universal rule upon the subject, the court should have submitted to the jury defendant's right to recover on his theory (b), the reasonable value of the services performed by him, if the jury also found that decedent was mentally incapacited, during the period of the services, to expressly contract therefor.

It might be insisted at this point that the inquest was conclusive evidence of the fact of decedent's incapacity, and which perhaps is true as to any transactions of decedent that might have transpired at that time; but, if the inquest was legal in all respects, it would only be prima facie evidence of his incapacity after that time. If the inquest was void, neither presumption would arise, and the fact of his incapacity to contract would then have to be established by other evidence; and the first question to be determined in adjudging the effect of the inquest is whether it was valid or void.

In 1918, by chapter 54, p. 156, of the acts of that year, the Legislature enacted sections 272a1 to and including 272a42 of the 1922 Edition of Carroll's Statutes and which were in force at the time of the inquest here involved. Only sections 272a15 and 272a16 are pertinent to the question before us. In the first one circuit courts are given *exclusive* jurisdiction "in all cases coming within the terms and provisions of this act"; but it is further provided therein that: "When no circuit court is in session in the county, inquests of insane persons

may be held by a judge of a circuit court, or by the presiding judge of the county court, but in no case shall an inquest upon an idiot be held except in the circuit court.'' The second section above (272a16) prescribes how the proceedings for an inquest may be instituted and which must be done by the filing of a petition by the person therein authorized, "with the clerk of the circuit court . . . setting forth facts verified by affidavit.'' It is then prescribed what facts the petition shall set forth and the persons who shall be notified thereof. It will thus be seen that the statute by the latter second section (272a16) expressly requires the proceedings to be filed *in* the circuit court, and the first one above (272a15) confers on that court *exclusive* jurisdiction thereof.

It, however, provides that if the circuit court is not in session for that county, then the proceedings may be presided over and held by either the circuit judge if he is present in the county, or by the judge of the county court, and which prescribed duties on the latter are not those to be performed by him as presiding officer of the county court, but as a sort of special judge to preside in the special proceedings authorized to be brought only in the circuit court, and which duties are analogous to similar ones, under prescribed condition, that the county judge performs in the granting of temporary injunctions or specific attachments. The record made by him as such presiding officer is, therefore, necessarily made in the circuit court and as a part of its records and not on the records of the county court. The inquest judgment in this case (which was all of that proceeding that was made a part of this record) shows on its face that it was had and held in the Pulaski county court on June 6, 1923, and it was held and conducted by the county judge during and at a regular term of the county court, the judgment specifying that it was upon a continued day of the regular May term of the county court. The proceedings were not instituted in the circuit court which, as we have seen, has exclusive jurisdiction; and, furthermore, the county judge presided at the inquest proceedings at a time when the statute did not authorize him to do so, it having been held during a regular term of circuit court for Pulaski county.

Under mandatory terms of the statute, and especially in view of the rule for its administration as announced in the case of Menifee v. Ends, 97 Ky. 388, 30 S. W. 881, 17 Ky. Law Rep. 280 (wherein it was held that

the statute should be strictly construed and literally followed), we are constrained to hold that the alleged inquest in this case in the county court, and at which the county judge presided, was void for want of jurisdiction. So that whether the decedent was of unsound mind at the commencement of and during the performance of the services for which compensation is sought by defendant is one to be determined from the evidence in the cause, excluding the verdict and judgment in the invalid inquest proceedings.

The reply in this case averred that defendant had received payment for all the services he rendered to decedent. In support of that allegation, and apparently without objection, plaintiff introduced a deed that decedent on January 25, 1919, executed to defendant and his brother, Hawk Stringer, conveying to them two parcels of land in Pulaski county. The consideration as recited in that deed was $2,000 "to be paid by maintaining and supporting and taking care of the party of the first part (decedent) during his natural life," and a lien was expressly retained in the deed to secure the performance of that consideration. If the terms and conditions of that deed were not, in some manner, later dispensed with then, clearly, defendant in performing the services for which he seeks recovery was paying the consideration of that deed, and, if so, he is not entitled to recover on his counterclaim in this case. He, however, introduced a later deed executed to himself by his brother and the decedent jointly of date June 16, 1920, in which the two grantors conveyed to him for the express consideration of $2,000 "cash in hand paid" the same land, and which conveyance was absolute on its face. He therefore insists that his obligations assumed in the first deed were annuled by the second one. But whether so or not the record does not disclose further than the recitation of the payment of the consideration in the second deed, but to whom it was made, if done, does not appear. The court gave no instruction on this theory of the case, although one was offered by plaintiff and refused with exceptions. Perhaps the court was influenced in not submitting that issue by the fact that he interpreted the pleadings as being insufficient to present it. We will not stop to determine whether that be true or not, since upon a return of the case the parties may amend the pleadings so as to directly and positively present the issue.

It will be perceived that the court by the quoted instruction, supra (No. 3), peremptorily directed a verdict in favor of defendant for the amount of the bank deposit, for which he sought recovery by his second counterclaim, or set-off. The only pleading, however, that would justify defendant's recovering that amount is the one above referred to, and which bases his right to that fund entirely and exclusively on the alleged *instruction* accompanying the deposit by the deceased, and which it will be remembered was that if anything should happen to him, or he should die, the deposit was to be paid to the defendant. Unless the facts so pleaded (the evidence being the same) were sufficient to transfer the title of the deposit account to defendant, either at that time or upon the death of the deceased, then, clearly, he had no right to it and the court erred in submitting to the jury his right to recover it by any instruction at all, much less the giving of the peremptory one to find for him the amount of it. Whether the pleaded facts operated to transfer the title in that account to defendant, either in praesenti by an inter vivos gift, or upon the death of decedent, which latter would have to be by will duly executed, are the two questions presented for determination in passing on the merits of that claim.

In the comparatively recent cases of Hale v. Hale, 189 Ky. 171, 224 S. W. 1078, Anderson's Adm'r v. Darland, 192 Ky. 624, 234 S. W. 205, Dickerson v. Snyder, 209 Ky. 212, 272 S. W. 384, and Peters' Adm'r v. Peters, 224 Ky. 493, 6 S. W. (2d) 499, we had before us, and there was therein determined, the essentials of a valid inter vivos gift. The facts in each of them will not be repeated here, since they may be found by consulting the opinions; but in each of them the fundamental facts necessary to complete a valid gift of that nature were declared to be an intention by the donor to transfer title to the property, and a delivery of it to and an acceptance by the donee. Of course, it was recognized in those cases that there may be either an actual physical or a constructive delivery, but it is absolutely essential that the one or the other be made. It is not necessary for us to enter into a detailed discussion of all the elements necessary to constitute such a valid gift, since this case is to be determined by the facts as pleaded and proven. Defendant neither averred nor proved any intention on the part of the decedent to relinquish control over, much less title to, the involved deposit account; and the pleading is equally silent in

averring any method of a delivery or any acceptance by him. Clearly, therefore, there was no inter vivos gift of the bank account that defendant sought to and did recover.

The only other remaining method by which defendant could have acquired title to the deposit account so as to enable him to recover its amount was upon the theory that decedent intended for him to have it upon the former's death. It requires, however, no authorities to establish that such an expressed intention to take effect after death is exclusively testamentary and must be executed according to one of the methods contained in section 4828 of our present Statutes. That section prescribes two methods for the making of a valid will, and both require that it shall be in writing, and, if not "wholly written by the testator," it shall be subscribed by him, *and* by at least two attesting witnesses in his presence; but if wholly written by and subscribed by him, it need not be witnessed. Defendant's pleading alleged neither method of executing the instructions to the bank upon which he relies, and for that reason he manifested no title by *devise* to the fund in question. If, however, he had alleged facts showing a compliance with one or the other of the two methods pointed out in the statute for the execution of a valid will, he would not then be entitled to recover the fund until the will as so executed was probated in the county court of Pulaski county, since it is a well-established rule that no property passes by devise, howsoever explicit the language, until the executed paper has been properly probated, and there was no averment or proof to that effect. It is therefore clear that the judgment in favor of defendant, in so far as it included the $2,293.70 representing the amount of the bank deposit on hand at the time of decedent's death, was and is erroneous and is sustainable upon no view presented by the record. Defendant not being entitled to recover of plaintiff on his counterclaim any part of the bank deposit account, the only judgment that he would be entitled to recover under any right asserted by him would be one against him in his representative capacity, and to be collected of assets of the estate. The judgment appealed from was against plaintiff personally, and which was also erroneous. If upon another trial, under the principles herein announced, there should be a verdict for any amount in favor of defendant, the judgment thereon should be as above indicated.

Wherefore, the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.