## Griffin v. Louisville Trust Co.

February 3, 1950.

W. Scott Miller, Judge.

146

James T. Robertson for appellant.

J. Verser Conner (deceased) and Brown, Greenebaum & Eldred for appellee.

CHIEF JUSTICE SIMS—Reversing.

In a suit to settle the estate of William Mann, deceased, Mrs. Carrie Griffin filed answer, counter-claim and cross-petition wherein she sought to recover from Mr. Mann's executor, The Louisville Trust Company, $6000 on a check decedent executed to her on Oct. 30, 1945, which the Bank refused to pay on account of lack of funds when the check was presented for payment on Oct. 31, 1945. The commissioner in an exhaustive report found against Mrs. Griffin on the ground that the check was not given for a consideration, nor was it a completed gift since it was not cashed during Mann's

life. The chancellor overruled the exceptions filed to the report and entered judgment denying recovery to appellant.

On this appeal all parties admit that the check is not valid as a gift because until a check is either paid or accepted by the drawee, it is incomplete as a gift and the death of the drawer operates as a revocation of the check. 24 Am. Jur. "Gifts" secs. 95 and 98, pages 779—781; Throgmorton v. Grigsby's Adm'r, 124 Ky. 512, 99 S. W. 650; Dickerson v. Snyder, 209 Ky. 212, 272 S. W. 384; Pikeville Nat. Bank & Trust Co. v. Shirley, 281 Ky. 158, 135 S. W. 2d 431. Under KRS 356.189, a check does not operate as an assignment of any part of the funds to the credit of the drawer in the bank.

Likewise, it is admitted that if this check was given in payment for past services which Mrs. Griffin rendered deceased, she cannot recover. He had paid her in full by the week for the services as they were rendered, and even though her services were worth more than the wages she received under her contract with deceased, there would be no consideration for this check since a moral obligation does not furnish a consideration for a new contract where there is no legal obligation. 12 Am. Jur. "Contracts" sec. 93, p. 586; sec. 100, p. 595; Holloway's Assignee v. Rudy, 60 S. W. 650, 22 Ky. Law Rep. 1406, 53 L. R. A. 353; Howard v. McNeil, 78 S. W. 142, 25 Ky. Law Rep. 1394; also see annotations in 17 A. L. R. 1299 and 79 A. L. R. 1346.

If there was any consideration to support this check, it was for services to be performed in the future for Mr. Mann by Mrs. Griffin. It will be necessary to give a brief picture of the Mann household, the services Mrs. Griffin rendered and then to turn to the evidence for a solution of this controversy.

Mrs. Griffin started working for Mr. Mann in 1938 as a housekeeper when she was 58 years of age. He had been totally blind for some fifteen years and lived in a large house in Louisville with two sisters, one of whom was deaf and dumb. The afflicted sister died soon after Mrs. Griffin entered Mr. Mann's service and the other sister lived only about a year. Mrs. Griffin's wages were $8 a week which were raised to $10 in about 1940. In December 1945 her wages were increased to $25 per

week at the suggestion of a nephew of Mr. Mann, and decedent gave her a $50 Christmas present that year.

Mr. Mann was a retired traveling salesman, whose chief interest was in flowers and he maintained a greenhouse on his premises. Although totally blind and a man advanced in years, Mr. Mann was quite active about his place and in caring for his flowers. Mrs. Griffin did everything for him; the housekeeping, the marketing, the cooking, the laundry and the firing of the furnace. In addition to all this, she read to Mr. Mann and went about town with him and would go into his lockbox. She wrote all of his checks, which he signed. She was Mr. Mann's eyes and hands and cared for him 24 hours a day. Being unable to distinguish night from day, Mr. Mann would at times water and work his flowers in the middle of the night, and sometimes got lost in his garden and would have to call Mrs. Griffin to come and get him. She seems never to have lost patience with, nor tired from serving him.

Mr. Mann died testate on Feb. 1, 1946, leaving an estate of some $130,000 which was devised to his nephews, as he had no nearer kin. By a codicil executed in 1942, he devised Mrs. Griffin $1000 and a choice of certain furniture in his home. On Oct. 30, 1945, he gave Mrs. Griffin a check for $6000, which she wrote and he signed. The following day she opened an account in the Louisville Trust Company and deposited the check to her credit. Mr. Mann then had only $2104.18 on deposit and the check was returned unpaid the next day to Mrs. Griffin at the Mann home by Mr. Furnish, an employee of the Bank, on account of insufficient funds. She invited Mr. Furnish in for a visit with Mr. Mann, but he declined the invitation for lack of time.

No one questions the genuineness of Mann's signature to the check and it was not contended that he did not know he was executing a check to Mrs. Griffin for $6000. However, it is shown that Mann although worth $130,000, never had as much as $6000 on deposit but one time during the ten years immediately before his death—his balance was $9000 on April 12, 1943. At the time of Mann's death his balance was $736.74. In October 1945 he had $5000 in bonds called, but he left this sum with his broker to be reinvested. The broker was unable to buy the security Mr. Mann wanted and this

sum was in cash in the broker's hands when Mann died.

Practically all of Mrs. Griffin's testimony was incompetent under sec. 606(2) of the Civil Code of Practice because it related to conversations and transactions with deceased. Edward W. Hinkle, a trust officer of the Bank, testified that the check bore Mann's signature and that Mrs. Griffin opened an account and deposited the check in the Bank on Oct. 31, and it was returned to her unpaid on Nov. 1, 1945, for lack of sufficient funds.

All of Mrs. Griffin's witnesses were reliable and reputable people who were neighbors and friends of deceased and of his family, with ample opportunity to observe the facts about which they testified. Furthermore, they appear not to be interested in the outcome of this suit and their testimony was a fair and unprejudiced narration of facts within their knowledge.

Oscar Nettleton, an employee of the Yellow Cab Company for 15 years and who often drove Mr. Mann, testified that Mrs. Griffin's health had failed under her strenuous duties. He stated Mr. Mann said, "Mrs. Griffin was a godsend to him;" and that he did not want her to die before him because, "I don't know what I would do without her." Deceased mentioned to him several times that he had drawn this $6000 check and had given it to Mrs. Griffin.

Mrs. Julia Spellman, a next-door-neighbor to deceased, testified that Mr. Mann regarded Mrs. Griffin very highly and appreciated her services to him and once told witness that he didn't think he could live very long without Mrs. Griffin.

Mr. C. B. Sims, a postal employee for 39 years whose home was next to deceased, stated that Mr. Mann's blindness made him peculiar and "in later years he seemed to draw himself in more * * * and had great consolation having her (Mrs. Griffin) around, and depending upon her almost like a child."

Mrs. Marie L. Haury, a life-long friend of deceased and his family, testified that Mr. Mann told her of his great appreciation of Mrs. Griffin when witness visited his home. She expressed herself in these words: "He said he didn't know what he would do without her. In

his later years, when his health became worse, he expressed to me that he was afraid she might die before him, or would have to leave him, and he said he did not know what he would do without her."

Here, we have an old, blind man with no relatives nearer than nephews living alone in a large house with an old lady who had served him for more than seven years and to such an extent that she had become broken in health, which fact he knew. Mr. Mann appears to have been a gentleman of refinement and appreciation. He was worth something over $130,000 and was paying Mrs. Griffin but a meager wage for the service she was performing, and his great concern was that she might leave him before he died. It is clear to our minds from the competent testimony of the four witnesses to whom we have just referred that Mr. Mann executed this $6000 check to Mrs. Griffin in consideration of her remaining with and caring for him until the end of his days, which she did, and not for services theretofore performed for which he had paid her in full.

It is argued by the executor that Mrs. Griffin did not agree to remain with Mr. Mann until his death, hence the consideration for which the check was given was not future services. The answer to that is she did remain with him and nursed the old gentleman during his last illness.

The instant case is strikingly like Foxworthy v. Adams, 136 Ky. 403, 124 S. W. 381, 27 L. R. A., N. S., 308, Ann. Cas. 1912A, 327. Before death Foxworthy gave a check to his wife for $500, and another check in the same amount to his physician, Dr. McClure. Neither check was paid during the life of the drawer because he was somewhat short on cash although he left an estate of some $10,000 or $12,000. This court held the check to the wife was a gift and was without consideration as it was her duty to nurse and care for her husband, and his death before payment of the check revoked the gift. But that the check given to the doctor was supported by consideration even though the evidence showed Foxworthy only owed his physician $180.05, and a paper executed about the time he gave the check recited that the balance of the $500 was a present to Dr. McClure. It was there said that although Foxworthy used the word "present," the balance of the

check over the $180.05 was to pay the doctor for services thereafter to be rendered. The opinion does not show that Dr. McClure agreed to perform any future services for his patient, but it does show that he did perform them. Likewise, the evidence before us plainly shows that Mr. Mann executed this check to Mrs. Griffin for services to be performed in the future and that she rendered them faithfully and efficiently until his death.

The judgment is reversed with directions that one be entered in conformity with this opinion.