· NORWAY SAVINGS BANK, in equity,

*vs.*

MILTON H. MERRIAM, and others.

SAME *vs.* SAME.

## Oxford.    Opinion June 19, 1895.

*Trust.    Gift.    Savings Banks Deposit.*

The important difference between a gift and a voluntary trust is, that in the one case the whole title, legal as well as equitable, the thing itself, passes to the donee, while in the other, the actual, beneficial or equitable title passes to the cestui que trust, while the legal title is transferred to a third person or is retained by the one creating it, to hold for the purposes of the trust. But a gift of the equitable or beneficial title must be as complete and effectual in the case of a trust as is the gift of the thing itself in a gift inter vivos.

To create a trust the acts or words relied upon must be unequivocal, implying that the person creating the trust holds the property as trustee for another. There must be an executed gift of the equitable title without any reference to its taking effect at some future time.

While courts of equity will enforce a perfect and completed trust, although purely voluntary, they will lend no assistance towards perfecting a voluntary agreement for the creation of a trust, nor regard it as binding so long as it remains executory. Nor will courts enforce as a trust a transaction which was intended as a gift but is imperfect for that purpose.

On April 27th, 1892, Mrs. Esther S. Reed, having at that time a deposit in the Norway Savings Bank of $1901.23 standing in her own name, surrendered her pass-book and had the whole of her deposit transferred to two new accounts. By her direction the sum of $950.62 was entered upon the books of the bank and upon a pass-book as follows: "Norway Savings Bank in account with Esther S. Reed and Harry Q. Millett or their survivor in joint tenancy." And the sum of $950.61 was entered by her direction upon the books of the bank and upon a pass-book as follows: "Norway Savings Bank in account with Esther S. Reed and Myra J. Millett, or their survivor in joint tenancy." Both of the pass-books were delivered to Mrs. Reed and were always afterwards kept by her among her private papers, where they were found after her death by her executor. She never in any way notified either Myra J. or Harry Q. Millett of the transaction at the savings bank, nor did either of them have any knowledge of it from any source until after her death. Mrs. Reed never drew any portion of the principal or interest of the deposit, and the accounts were in no way changed except that the semi-annual interest was placed to their credit. Myra J. Millett was an adopted daughter of Mrs. Reed, and Harry Q. Millett is the son of Mrs. Millett. Evidence was introduced of statements and declarations made by Mrs. Reed, tending

to show an intention upon her part that these deposits should take the place of certain provisions in favor of Mrs. Millett and her son in Mrs. Reed's will made several years prior to the transaction at the savings bank and that she intended to change her will by striking out the bequests in their favor. She died without ever having made any change in her will.

*Held*; that the acts and declarations of Mrs. Reed were not sufficient to constitute a completed gift or to create a voluntary trust;

That she did not intend by the transfer of her deposit to the new accounts, to make at that time fully executed gifts of either the legal or equitable title to the new deposits; but that her intention was to make a testamentary disposition of the deposits, so that the persons named should each take, in case he or she survived her, what might be left of each sum after her death;

That such an attempted disposition is void because contrary to the statute of wills.

On REPORT.

These were two bills of interpleader brought by the Norway Savings Bank to determine the ownership of two deposits in that bank, and were heard on bills, answers and proof.

The case is stated in the opinion.

*J. A. and Ira S. Locke*, for executor of the will of Esther S. Reed.

*A. R. Savage and H. W. Oakes*, for Harry Q. and Myra J. Millett.

The circumstances all show that, at the time of the deposit, Mrs. Reed intended to make it in trust for the Milletts. There is no adverse argument to be drawn from her retention of the deposit books. *Minor* v. *Rogers*, 40 Conn. 512. She retained a joint interest in the deposit during her lifetime, with the contingency of having the entire deposit by survivorship. The book must be in the hands of one of the joint tenants. It cannot be in the hands of both. The decisions are numerous that the retention of the book under such circumstances does not bar the trust. *Barker* v. *Frye*, 75 Maine, 31; *Brinckerhoff* v. *Lawrence*, 2 Sand. Ch. 442; *Scott* v. *Berkshire Savings Bank*, 140 Mass. 157; *Northrop* v. *Hale*, 72 Maine, 275; *Minor* v. *Rogers*, 40 Conn. 512; *Blasdell* v. *Locke*, 52 N. H, 238; *Urann* v. *Coates*, 109 Mass. 581.

Nor was the trust void because, in some respects, it looked to a distribution of the fund after death. It is not testament-

ary, because a present beneficial interest was vested in the cestuis que trustent. The Milletts were joint tenants with her eo instanti. *Fletcher* v. *Fletcher*, 4 Hare, 67 ; *Stone* v. *Hackett*, 12 Gray, 227.

Neither is the trust in such case void because the donor reserves the right to use a part of the deposit or has in fact actually used a part. *Northrop* v. *Hale*, supra ; *Stone* v. *Hackett*, supra ; *Davis* v. *Ney*, 125 Mass. 590 ; *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159 ; *Minor* v. *Rogers*, supra.

In Massachusetts, the courts have intimated that there must be some evidence of intention outside of the mere entry upon the pass-book unless that was absolutely clear. A careful examination of the circumstances in those cases where it was held that the deposit was not in trust, develops the fact that in nearly every case the evidence preponderated or clearly showed that the depositor's purpose was something else, as, for example, to evade the by-laws of the bank or the statutes of the state, and for other similar reasons.

SITTING : PETERS, C. J., WALTON, EMERY, WHITEHOUSE, WISWELL, JJ.

WISWELL, J. On April 27th, 1892, Mrs. Esther S. Reed, having at that time a deposit in the Norway Savings Bank of $1901.23, standing in her own name, surrendered her pass-book and had the whole of her deposit transferred to two new accounts. By her direction the sum of $950.62 was entered upon the books of the bank and upon a pass-book as follows : "Norway Savings Bank in account with Esther S. Reed and Harry Q. Millett or their survivor in joint tenancy." And the sum of $950.61 was entered by her direction upon the books of the bank and upon a pass-book as follows: "Norway Savings Bank in account with Esther S. Reed and Myra J. Millett, or their survivor in joint tenancy."

Both of the pass-books were delivered to Mrs. Reed and were always afterwards retained by her ; they were found after her

death by her executor among her private papers. She never in any way notified either Myra J. or Harry Q. Millett of the transaction at the savings bank, nor did either of them have any knowledge of it from any source until after her death.

Mrs. Reed died October 26th, 1892, leaving a will dated August 13th, 1883, nearly nine years before the time of making the deposits above referred to, in which she made a bequest of $1000 in favor of Harry Q. Millett and of $500 in favor of Myra J. Millett. Myra J. Millett is an adopted daughter of Mrs. Reed and Harry Q. Millett is the son of Mrs. Millett. Mrs. Reed never drew any portion of the principal or interest of the deposits, and the accounts were in no way changed except that the semi-annual interest was placed to their credit.

Evidence was introduced of statements and declarations made by Mrs. Reed, tending to show an intention on her part that these deposits should take the place of the pecuniary provisions of her will in favor of Mrs. Millett and her son, and that she intended to change her will by striking out the bequests in their favor. She died without having made any change in her will.

Both of these deposits being now claimed by the executor of Mrs. Reed's will as belonging to her estate, and by Mrs. Millett and Harry Q. Millett respectively, the Norway Savings Bank has brought these two bills of interpleader to have the title to the same determined. The cases come to the law court upon report, the facts being the same in each.

That the acts of Mrs. Reed were not sufficient to constitute a gift of each of these deposits, must be and is conceded. To constitute a valid gift inter vivos the giver must part with all present and future dominion over the property given. He cannot give it and at the same time retain the ownership of it. There must be a delivery to the donee or to some one for the donee. And the gift must be absolute and irrevocable without any reference to its taking effect at some future period. *Dole* v. *Lincoln*, 31 Maine, 428 ; *Carleton* v. *Lovejoy*, 54 Maine, 446 ; *Robinson* v. *Ring*, 72 Maine, 140 ; *Northrop* v. *Hale*, 73 Maine, 66.

Here there was no delivery, either actual or constructive.

No surrender by Mrs. Reed of the control over the deposits. Whatever Mrs. Reed's intentions may have been, intention alone is not sufficient to constitute a valid gift. "The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated." *Beaver* v. *Beaver*, 117 N. Y. 421.

For the same reasons, as well as for others, these were not gifts causa mortis.

But it is claimed that these acts of Mrs. Reed were sufficient to create voluntary trusts in favor of Myra J. and Harry Q. Millett.

The only important difference between a gift and a voluntary trust is, that in the one case the whole title, legal as well as equitable, the thing itself, passes to the donee, while in the other, the actual, beneficial or equitable title passes to the cestui que trust, while the legal title is transferred to a third person or is retained by the person creating it, to hold for the purposes of the trust. But a gift of the equitable or beneficial title must be as complete and effectual in the case of a trust, as is the gift of the thing itself in a gift inter vivos. "It is just as essential, to establish the trust sought to be set up here, to prove some act on the part of the donor that shall operate to pass the equitable title to the donee, as it is to prove delivery in a gift inter vivos." *Bath Savings Institution* v. *Hathorn*, 88 Maine, ante, p. 122.

The creation of a trust is but the gift of the equitable interest. But on account of the difference in the form and purposes of the two transactions, it necessarily follows that different acts are essential in the two cases. While delivery and a surrender of all present and future dominion over the property given is absolutely necessary in a gift, these would be inconsistent with the very purposes of a trust, where a person creates himself as the trustee; possession and control in such a case remain in him who has the legal title, subject to the direction of courts of equity.

But while delivery and surrender of possession are not necessary in the creation of such a trust, as is here sought to be maintained, there must be other acts which are so far equivalent as the nature of the transaction will permit.  A perfect or completed trust is created where the donor makes an unequivocal declaration, either in writing or by parol, that he himself holds the property in trust for the purposes named.   He need not in express terms declare himself trustee, but he must do something equivalent to it, and use expressions which have that meaning.   To create a trust the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another.   There must be an executed gift of the equitable title without any reference to its taking effect at some future time.

While courts of equity will enforce a perfect and completed trust, although purely voluntary, it is certainly true that equity will lend no assistance towards perfecting a voluntary contract or agreement for the creation of a trust, nor regard it as binding so long as it remains executory.   In order for such a trust to be valid and enforceable, it must always appear from the written or oral declaration, from the nature of the transaction, the relation of the parties and the purposes of the gift, that the fiduciary relation is completely established.   Nor will the court enforce as a trust a transaction which was intended as a gift but is imperfect for that purpose, "for then every imperfect instrument would be made effectual by being converted into a perfect trust."   If such a trust is otherwise sufficiently created, its validity is not affected by the fact that the donor reserved the right to modify the purposes or revoke the trust, nor that he reserved the income of the trust fund during life.

The foregoing is the general doctrine in relation to voluntary trusts as laid down by many authorities.   *Martin* v. *Funk*, 75 N. Y. 134 ; *Young* v. *Young*, 80 N. Y. 422 ; *Beaver* v. *Beaver*, supra ; *Stone* v. *Hackett*, 12 Gray, 227 ; *Davis* v. *Ney*, 125 Mass. 590 ; *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159 ; *Sherman* v. *New Bedford Savings Bank*, 138 Mass. 581 ; *Pope* v. *Burlington Savings Bank*, 56 Vt. 284 ;

*Connecticut River Savings Bank* v. *Albee,* 64 Vt. 571; *Marcy* v. *Amazeen,* 61 N. H. 131; *Taylor* v. *Henry,* 48 Md. 550; *Robinson* v. *Ring,* supra; *Bath Savings Inst.* v. *Hathorn, supra.*

Applying these general principles to the facts in the cases under consideration, it becomes necessary to determine whether Mrs. Reed by any unequivocal language or act showed her intention to create an executed voluntary trust with respect to these deposits, in favor of the persons named, so that whatever legal rights she retained were to be thereafterwards held by her as trustee for the donees.

We do not think that any acts or language of hers can admit of such interpretation. She never made a declaration of trust, formal or otherwise. She never notified the persons named as joint tenants of the transaction at the savings bank; and while this may not be necessary if the creation of the trust is clearly established, it is a circumstance of greater or less weight, according to the facts of each case, upon the question of intention. It seems to us that she purposely retained possession of the pass-books and withheld all knowledge of the transaction from the persons named in the entries upon the books, in order that she might retain the control of the deposits for her own purposes if necessary. We cannot see that she ever by act or word constituted herself a trustee of these sums of money for others.

In the recent case decided by this court of *Bath Savings Inst'n* v. *Hathorn,* supra, p. 122, in which a voluntary trust was sustained, the deposit was made "in trust for Alice B. Files." The court held that the words "in trust for" were sufficient to create a prima facie trust and that the declaration, acts and conduct of the donor were consistent with the presumption arising from the entry.

In *Barker* v. *Frye,* 75 Maine, 29, a deposit was made in a savings bank in the name of the donee, subject to the order of the donor during her lifetime. Subsequently the donor notified the treasurer of the bank that she desired to make such a change as would give the donee the full and absolute control over the deposit from that time and that her right to control the same should cease, and at her request the original entry, "subject to

the order of" the donor, was erased. She immediately notified the donee by letter of what had been done and that the bank book would be delivered to him the first time that they met. The donee accepted the gift. The court held that the gift was complete. The important and controlling facts in these cases do not exist in the cases now under consideration.

This court has held that where A deposited money in a savings bank in the name of B, without a declaration of trust at the time or subsequently, and retained the deposit book until his death, it was not sufficient to constitute either a gift or a trust. *Robinson* v. *Ring*, 72 Maine, 140.

That where A deposited in a savings bank money in the name of B, but without the knowledge of B, with the entry on the books of the bank and on the pass-book, subject to A, and A received the dividends and such portion of the principal as she required for her own use and held the pass-book always in her possession, that these facts did not constitute either a gift or a trust in favor of B, and that if there was any trust, B was the trustee for the depositor. See also *Parcher* v. *Savings Institution*, 78 Maine, 470 ; *Curtis* v. *Portland Savings Bank*, 77 Maine, 151 ; and *Drew* v. *Hagerty*, 81 Maine, 231.

It is, of course, true that the transaction at the savings bank in April, 1892, had some significance, and that by the change that Mrs. Reed had made at that time she intended to do something for the benefit of the persons, whose names by her direction, were respectively entered upon the books as joint tenants with her. But we think it is clear from the nature of the transaction, that she did not intend by this tranfer of her deposit to the new accounts, to make at that time fully executed gifts of either the legal or equitable title to the new deposits, or to part with all control over the same, except such as she might retain as trustee for the benefit of others ; but rather that her intention was to make a testamentary disposition of these deposits, so that the persons named should each take, in case he or she survived her, what might be left of each sum after her death. Such an attempted disposition is inoperative because contrary to the statute of wills. *Augusta Savings Bank* v. *Fogg*, 82

Maine, 538; *Sherman* v. *New Bedford Savings Bank*, 138 Mass. 581; *Smith* v. *Speer*, 34 N. J. Eq. 336; *Towle* v. *Wood*, 60 N. H. 434.

In *Sherman* v. *New Bedford Savings Bank*, supra, A made a deposit with the following condition annexed: "Interest to be paid on order of A. Principal to be drawn by B after decease of A." It was held that this was not a perfect gift, that the intention of the donor was that the gift should not take effect until after his death and was therefore void. In this case the intention of the depositor was similar in effect. It cannot be claimed that the persons named as joint tenants could draw any portions of the funds until after the death of Mrs. Reed; until that time she intended to retain possession and control, not merely as trustee. It was only after her death that the survivor should have the benefit of the money deposited; until that time the attempted gift was not to take effect. There is a well-recognized distinction, and one upon which may depend the validity of the transaction, between a fully executed gift or trust in which the donor reserves the right to the income or even to such part of the principal of the fund as may be needed, as in *Davis* v. *Ney*, and *Stone* v. *Hackett*, supra, and an unexecuted trust which is not to take effect until the death of the donor.

Our conclusion, therefore, is that there was no perfected gift of either the legal or equitable title to the sums deposited by Mrs. Reed in the Norway Savings Bank, and that these deposits consequently belong to her estate.

We think however, in view of all the circumstances, that the taxable costs of each of the parties should be paid out of the estate.

*Decree accordingly.*