## Cincinnati Finance Company et al. v. Atkinson's Administrator.

(Decided June 20, 1930.)

(As Modified on Denial of Rehearing November 14, 1930.)

BENTON, YUNGBLUT, SCOTT & BENTON, C. F. SEE, JR., and J. P. CUSICK, Warning Order Attorney, for appellants.

FRED M. VINSON, J. N. MARCUM and W. T. CAIN for appellee G. W. Atkinson's Administrator.

MARTIN & SMITH and W. W. SMITH for other appellees.

Opinion of the Court by Commissioner Hobson— Reversing.

G. W. Atkinson died intestate July 2, 1924, a resident of Lawrence county. J. N. Marcum qualified as administrator of the estate and brought this action February 3, 1925, to settle the estate. The action was referred to the commissioner to report debts and assets. The commissioner filed a report of debts, which was approved. On May 12, 1927, the plaintiff filed an amended petition in which he alleged that at the time of his death the intestate was president of the Louisa Water & Improvement Company and, as shown by its books, was the owner and holder of 370 shares of its capital stock out of a total of 500 shares; but the widow of the decedent, Vessie P. Atkinson, had set up claim that she was the owner thereof. She filed answer denying that the stock belonged to the estate and asserted that it belonged to her by reason of the transfer of 407 shares made by her husband to her prior to his death. The administrator filed a second amended petition, alleging in substance, that the stock had come to his possession, having been found among the papers of the decedent and had not been transferred to any one; that he as administrator had taken possession of the stock and held it for several months and voted it as belonging to the estate; that the widow had in some manner procured possession of the stock and was, without right, withholding it from him; and that as such administrator he was entitled to the immediate possession thereof, which was prayed. Issue was joined on the amended petition. The creditors had, in the meantime, each filed an answer and cross-petition setting up their claims against the estate. The debts amounted to about $25,000, and outside of the stock there was little to pay thereon. A large amount of depositions were taken. The case came on for trial October 15, 1928. It was heard by the court, but no judgment was entered during the term. After the end of the term the judgment was prepared and directed by the judge to be entered adjudging the 407 shares of stock to Vessie P. Atkinson, as her property, to which the administrator excepted and prayed an appeal to the Court of Appeals, which was granted. The creditors moved the court to set aside the judgment, also to modify it to show that they excepted to it, and to grant them an appeal. The

court overruled the motion, as he had signed the judgment in vacation. The creditors then filed a copy of the judgment with the clerk of this court; the administrator refused to appeal or to join with them in the appeal.

The first question presented in the case is the right of the creditors to appeal. They were parties to the action. Their claims had been allowed. No exception is necessary to a final judgment. Coffman v. Wilson, 2 Metc. 542; Loving v. Warren County, 14 Bush 316. Under section 734 of the Code of Civil Practice, an appeal to this court shall be granted as a matter of right to a party or privy or against a party or privy by the court rendering the judgment on motion during the term at which it is rendered, or thereafter by the clerk of the Court of Appeals. The creditors, being the only parties really in interest, have therefore clearly the right to appeal. Heldrich v. Silva, 89 Ky. 422, 12 S. W. 770, 11 Ky. Law Rep. 645.

The Louisa Water & Improvement Company is a Kentucky corporation organized in the year 1910 by the intestate. He acted as its president and had full charge of its business from its organization until his death. The authorized capital stock was $50,000, divided into 500 shares of $100 each. Under date of March 14, 1910, 13 certificates for a total of 370 shares were issued in the name of the decedent. These 370 shares remained in the stock book attached to the stubs and uncanceled and were so found by the administrator. They were listed by the appraisers as part of G. W. Atkinson's estate, at the value of $70 a share. They appear in the minutes of the stockholders' meetings as the number of shares held by decedent until the meeting of March 3, 1914, when the decedent reported that he had purchased 54 shares from two other shareholders and it was ordered that such 54 shares be canceled and reissued to him. The minutes do not show that this was done, but thereafter the minutes of the stockholders' meeting recited him to be the owner of 410 shares. There had been originally issued to his wife, Vessie P. Atkinson, 60 shares of the stock, and she had been elected a director at a stockholders' meeting, March 2, 1915, and on the same date at a directors' meeting was elected secretary and treasurer and appears to have held that position until her husband's

death; but he seems to have prepared and written all the minutes. The minutes of a meeting held on August 1, 1924, just after the death of the decedent, recites as present, among other stockholders, "J. N. Marcum, executor of the estate of G. W. Atkinson, 410 shares." "The executor," J. N. Marcum, was appointed general manager and treasurer and empowered to transact the business of the company, as G. W. Atkinson had done. These minutes were signed by Vessie P. Atkinson, secretary. Similar minutes were made of meetings held on April 6, 1925, and on December 21, 1925.

Shortly after this Mrs. Atkinson set up claim to 410 shares of the stock. The facts shown by her are these: In August, 1920, her sister was very sick at her house and she was very much concerned about her. She was in the kitchen when her husband came in and asked her to come into the office. He said he wanted to fix up some minutes. He kept the papers of the water company at his house in a room set apart for that purpose and had a safe there. She says: "I remember of him coming into the kitchen and asking me to come into the office; that he wanted to fix up some minutes and I remember of going over and staying a while. I don't remember what he said to me. I was called back to the kitchen again and of course with my mind on my ill sister I don't remember what was said or done, only that much. That is all I remember." She found the papers in the drawer of a china closet in which she kept her deeds and other papers, in 1926, about the time she set up her claim to the stock. She says that the June before he had told her that he would fix up a paper to sign in case anything should happen to him so that everything would be all right, and he afterwards said everything was fixed all right. The paper produced by her is a certificate to G. W. Atkinson for 407 shares of stock signed by G. W. Atkinson as president and by her as secretary. On the back of the certificate are these words:

"For value received I hereby sell, transfer and assign to Vessie P. Atkinson Four Hundred and Seven shares of stock within mentioned and hereby authorize her as secretary to make the necessary transfer on the books of the corporation. Witness my hand and seal this 24th day of August, 1920.

"G. W. Atkinson.

"Witnessed by: Geo. T. Hatcher."

Appellants earnestly insist that the paper is not genuine and has been gotten up since Atkinson's death. They introduced four experts testifying that it was not his handwriting. On the other hand, two experts testified that it was his handwriting, and a number of persons who knew his handwriting well testified that this paper was in his handwriting. George T. Hatcher was dead, and there was like contrary testimony as to the genuineness of his signature. On the other hand, there was proof by seven witnesses that after this G. W. Atkinson told each of them that he had transferred all of his stock to his wife, except 3 shares. This was said when some of the witnesses wanted him to put up some of this stock as collateral security on notes. and on other like occasions. There is confirmatory evidence of this in the subsequent conduct of G. W. Atkinson. On the stub in the stock book, from which the above certificate was torn, are these words in pencil: "Certificate No. 19a, for 407 shares issued G. W. Atkinson, date August 24, 1920." And in ink these words: "Transferred from G. W. A. all holdings except three shares cancelling certificates Nos. 1, 4 and Nos. 5 to 15 inclusive. Number of original shares 410. Number of shares transferred 407." No certificate was ever issued to Vessie P. Atkinson for 407 shares. Appellants earnestly insist that the above entry on the stub book has been made since Atkinson's death. But the writing in ink looks very much like the other writing in the book. The genuineness of the record is conclusively confirmed by seven disinterested witnesses testifying to his declarations that after this he owned only three shares of stock; none of these witnesses is impeached or contradicted.

The question remains: Was the transaction between Mrs. Atkinson and her husband completed by a delivery of the assignment of the stock certificate? It is clear from the evidence that it was without consideration and a gift is not complete without delivery and acceptance. In 28 C. J. 643, sec. 37, the rule is thus stated:

"Except where the donor makes himself trustee for the donee, an unmistakable and unconditional acceptance on the part of the donee is an essential element to the validity of a gift inter vivos. It is immaterial whether delivery and acceptance are contemporaneous, or which precedes the other. Acceptance need not be immediate. It is sufficient

if the gift is accepted before revocation by death or otherwise.''

To same effect, see Combs v. Roark, 221 Ky. 679, 299 S. W. 576; Peters v. Peters, 224 Ky. 493, 6 S. W. (2d) 499, 59 A. L. R. 969, and cases cited.

Upon a careful consideration of the evidence by the whole court, it is concluded that there was no acceptance of the assignment of the certificate by Mrs. Atkinson in her husband's lifetime. Her testimony as well as her conduct after her husband's death indicates that she did not know what her husband had done on the evening referred to, and when he subsequently told her that he had fixed everything all right she trusted to his judgment. She did not remember what had occurred. She did not know whether he had assigned her 1 share or 407 shares, or anything else. It does not appear from the testimony when or how the paper got in the drawer in which she kept her papers. She did not know, so far as the proof shows, of the existence of the paper or its contents, until she found it in the drawer. Plainly there was no acceptance by her of the gift until then. But a gift cannot be accepted after the death of the donor. If the title has not passed out of the donor in his lifetime, the gift is incomplete.

It is argued, however, that conceding no gift inter vivos of the stock in question was established by the evidence due to a failure of proof of a delivery to and acceptance by the donee of such stock, the judgment of the lower court should still be affirmed because the evidence does establish a parol trust of the stock on the part of G. W. Atkinson for the benefit of his wife. To this we are unable to agree. The evidence shows no intention on the part of Atkinson to establish a trust. His intention, as disclosed by the proof, was to make an outright gift to his wife of the legal as well as the equitable title to the stock. His indorsement on the back of certificate 19 A negatives the idea that he purposed holding the legal title to the stock in trust for his wife. His declarations of what he had done were all with reference to an outright gift of both legal and equitable title. They are not consistent with a purpose to retain the legal title under a parol trust. His acts disclose no declaration or establishment of a parol trust. They, on the contrary, disclose nothing more than an effort to make a gift which

was incomplete due to a lack of delivery to and acceptance by the donee. The parol trust theory must fail for lack of proof.

On the whole record the court concludes that the judgment in favor of Mrs. Atkinson for this stock cannot be for these reasons sustained.

Judgment reversed, and cause remanded for a judgment as above indicated.

Whole court sitting with exception of Judge WILLIS.