### Frazier v. Hudson.

June 23, 1939.

Charles C. Marshall, Judge.

Gilbert & Davis for appellant.

Turner & Rouse for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the time of the transaction here in contest the appellee, A. M. Hudson, defendant below, resided in Henry County, Kentucky, and was then about 78 years of age. He had succeeded in accumulating considerable property, composed of both real estate and personalty. His wife had died, and he had executed deeds dividing his extensive farm among his children—who were married, and, as we gather, were living on the portions allotted to them, except his daughter, the appellant and plaintiff below, Mary Lee Frazier, nee Hudson, who was an in-

fant 19 years of age and living with her father. In making the division of his land plaintiff was deeded 62 acres, but which did not embrace the residence, and defendant reserved a life interest in that tract for himself, plus a similar reservation in 34 acres of an adjoining allotment to another child, and upon which 34 acres was located the Hudson residence.

Some four years or more before the filing of this action, plaintiff married one Frazier, and she and her husband desired a separate residence. To accommodate them defendant purchased another 62 acres and deeded it outright to his daughter, but did not alter in any manner the disposition of his home place that he had reserved for himself during his life. So that, the total amount of land given to plaintiff by defendant was and is 62 acres unencumbered by any prior estate, and 62 acres encumbered by defendant's life estate—the land being worth, according to the undisputed testimony, at least $150 per acre—it being, in the language of defendant, "as good land as a crow ever flew over."

Among the personal property owned by defendant was a number of U. S. Liberty Bonds of $1000 each, and on March 13, 1926, he went to the bank in which the bonds were deposited in a safety box and after procuring them he, by writing on the back thereof, assigned one of them to each of his children. The assignment of the one here in contest says: "For value received I assign to Mary Lee Hudson the within registered bond of the United States and hereby authorize the transfer thereof on the books of the United States Treasury Department." Defendant then signed it, as he did other bonds to his other children, and acknowledged it before the assistant cashier of the bank. He then put the bonds back in his box and never informed any one of what he had done, except the assistant cashier. The bonds were redeemable by the government after 1933, but were not due until 1938. A year or more following 1933 defendant received notice that the government desired to redeem his bonds and he, for the first time, notified his children of the endorsements that he had made thereon and requested a re-transfer of them to him so that they might be redeemed, and with the intention as he testified without objection, to re-invest the proceeds in similar bonds.

All of the children except plaintiff readily consented

thereto, none of them, except her, asserting any interest in the particular bond that had been so transferred to them. She, however, declined, and later filed this action against her father in the Henry circuit court, seeking to recover possession of the bond that had been so transferred to her, with damages from the date of its transfer, which she fixed at the rate of 4½ per centum annually, which was the rate of interest that the bond drew, and which he collected after the endorsement. She did not ask for or obtain a writ of claim and delivery at the beginning of the action. In her petition she claimed the property as a gift inter vivos, but she appears to have later abandoned that and to base her claim of title under the doctrine of an express declaratory trust, emanating from the written declaration of her father as contained in the writing on the back of the bond. Evidencing such abandonment we insert some excerpts from brief of plaintiff's counsel, made by them in disposing of the argument of defendant's counsel that the transaction in controversy did not constitute an inter vivos gift. They say: "The obvious reasoning upon which those cases are to be distinguished from the case at bar is that in those cases there was no thought of anything other than an inter vivos gift. The supposed donors had obviously intended to make an inter vivos gift, and nothing more. Since the elements required to sustain a gift were lacking, the 'gifts' failed. In the instant case, however, there was no contention that the transaction involved an inter vivos gift, but on the contrary, that it does not."

Later in their brief they say this: "In the instant case, the evidence certainly does not tend to establish an inter vivos gift. There was no delivery; no passing of the dividends; no surrender of present custody. Yet, there was a formal written declaration, made by the appellee before an official, setting out that appellee transferred the bond to his then infant daughter."

Then follows an argument that, though the transaction was ineffective as an inter vivos gift, yet it was sufficient to create an enforcible declaration of trust, which, if true, has the same effect as if the original contention of an inter vivos gift had prevailed.

Defendant's answer to the petition denied all material averments contained therein, except the assignment, and he denied all intention of making thereby any sort

of present transfer of title to the bond from himself to his daughter. On the contrary, he asserted that his only intention was to fix it so that his daughter and other children would receive the respective bonds so transferred at the time of his death *if* he still owned them at that time, and had not consumed them in his necessary living expenses, or otherwise. No objection was made to that testimony as given by him, and it corresponds with his conduct thereafter in retaining possession of the bonds and collecting the interest thereon for his own use, and in not informing the children of what he had done. However, it should be said that plaintiff testified that her father did inform her at or following the transfer made by him, but her testimony on that point is more or less unconvincing, and it was necessarily discarded by the court, who believed the testimony of the father rather than that of the daughter. On final submission after evidence taken the court dismissed plaintiff's petition, to reverse which she prosecutes this appeal. In view of the express admissions of counsel supra, we will dismiss without comment the original claim of plaintiff that she obtained title to the bond in question through an inter vivos gift from her father, and will treat the case from now on as one based upon the claim of a valid and enforcible declaration of trust.

One of the chief elements essential to the creation of such a trust is the manifestation of an intent on the part of the alleged donor or trustee to create it in favor of the alleged beneficiary in and to the particular property involved. In the Restatement of the Law of Trusts, Volume 1, page 73, Section 23, it is said: "In order to create a trust the settlor must properly manifest an intention to create such a relationship as constitutes a trust as defined in Section (2). * * * On the other hand, no trust is created unless the settlor manifests an intention to impose enforceable duties (see Section 25). So also, a manifestation of intention to create a trust inter vivos at some time subsequent to the time of the manifestation does not create a trust (see Section 26). So also, a manifestation by the owner of property of an intention to transfer the property to another person as an outright gift to him is not a manifestation of an intention to create a trust (see Section 31)."

Later on in the same volume, on page 100, Section 31, in discussing the effect of the failure of an intention to make an inter vivos gift, the text says: "If the owner

manifests an intention to give the beneficial interest in the property to another by employing one of these three methods, and the disposition is ineffective because of his failure to comply with the requirements for an effective disposition by that method, the disposition will not be upheld merely because it would have been effective if he had manifested an intention to employ one of the other methods. An ineffective gift, therefore, will not be upheld as a declaration of trust.''

In 96 A. L. R. page 383, there is an annotation upon the subject of ''May unconsummated intention to make a gift of personal property be made effective as a voluntary trust?'' It begins with this statement by the learned annotator: ''It has been said that the only important difference between a gift and a voluntary trust is that in the case of a gift the thing itself passes to the donee, while in the case of a trust the actual, beneficial, or equitable title passes to the cestui que trust, while the legal title is transferred to a third person, or is retained by the person creating it, to hold for the purpose of the trust. Possession and control in such a case remain with the trustee, but a gift of the equitable or beneficial title *must be as complete* and effectual in the case of a trust as is the gift of the thing itself in a gift inter vivos. *There must be an executed gift of the equitable title,* without any reference to its taking effect at some future time. Norway Savings Bank v. Mirriam (1895) 88 Me. 146, 33 A. 840. 'A trust is created only if the settlor *manifests an intention* to create a trust.' Section 23, Tentative Draft of Restatement of the Law of Trusts. The rule is well established that equity will not give effect to an imperfect gift by enforcing it as a trust, *merely because of the imperfection,* since to do so would be to give effect to an intention never contemplated by the maker.'' (Our italics.)

In discussing the element of *intent* in the creation of the character of trust here sought to be enforced the writer of the notes to the case of Marshall's Adm'r v. Marshall, 156 Ky. 20, 160 S. W. 775, 51 L. R. A., N. S., —annotation on page 1212—says (quoting from the case of Northrip v. Burge, 255 Mo. 641, 164 S. W. 584): ''The question in this case is not whether the preponderance of the competent evidence shows that the alleged trust was executed, but is whether that fact is established by evidence so clear, certain, complete, and convincing as to remove all reasonable doubt in our minds on the sub-

ject, for this is the rule when parol or verbal trusts are subjects of investigation.''

There is nothing in the Marshall case, nor any other case rendered by this court, either preceding or following it, contrary to the requirement of necessary intention of the settlor in creating such a trust. As we have seen from the excerpt in the annotation taken from 96 A. L. R. 384, ''a gift of the equitable or beneficial title must be as complete and effectual in the case of a trust as is the gift of the thing itself in a gift inter vivos. There must be an executed gift of the equitable title,'' etc. It is true that we said in the case of Ginn's Adm'x v. Ginn's Adm'r, 236 Ky. 217, 32 S. W. (2d) 971, 972, that ''an imperfect gift may be enforced as a trust when it possesses all the elements thereof [trust] and the proof is clear and undoubted.'' But no case from this court has gone beyond that expression. They are too numerous to take up and consider seriatim, but they embrace those cited and relied on by counsel for plaintiff. Some domestic cases supporting (expressly or by necessary implication) the above quoted texts are Schauberger v. Tafel, Ex'r, 202 Ky. 9, 258 S. W. 953; Cincinnati Finance Co. v. Atkinson's Adm'r, 235 Ky. 582, 31 S. W. (2d) 890; Biehl v. Biehl's Adm'x, 263 Ky. 710, 93 S. W. (2d) 836.

It being necessary, therefore, in order to create an enforcible declaration of trust that the *intent* of the donor to do so must clearly appear (the same as a similar intention to make an inter vivos gift of the legal title should likewise appear) our task is reduced to the inquiry, whether or not defendant—the father and donor in this case—intended to make a declaration of trust in favor of each of his children when he endorsed his bonds in the manner above described, followed by conduct totally inconsistent with such an intention? We are forced to the conclusion, in view of the authorities supra and in the light of fairness and justice, that it was not the intention of defendant in this case to transfer either the legal or the equitable title to his endorsed bonds to his children and to divest himself of all interest therein at the time he so endorsed them. All authorities hold that trusts created in the manner here contended for should be supported by clear and convincing proof, and which means that every element necessary to its creation should be so established. Otherwise the door would be widely opened whereby one without any

intention to part with his property would lose it through an effort to prepare against future contingencies in his laudable desire to provide for those dependent upon him. Both the testimony of defendant (which was admitted without objection), as well as his conduct, refute any such intention on his part, and, following the law as it has been so declared, we must hold that the court committed no error in dismissing plaintiff's petition.

Wherefore, the judgment is affirmed.

The Whole Court sitting.