## Hale et al. v. Hale et al.

June 20, 1950.

Edward P. Hill, Judge.

Combs & Combs for appellants.

Earl Cooper and Joe Hobson for appellees.

JUDGE KNIGHT—Reversing.

This litigation involves the ownership of, and title to, the sum of $3,548.71, which includes accumulated interest, now on deposit in the Bank Josephine of Prestonsburg, Ky. The facts are these: On December 16,

1946, R. B. Hale deposited to his own credit in a savings account of the bank the sum of $3,500. At the time of the deposit, an employee of the bank, at Hale's direction, made on the ledger sheet where the account was posted this endorsement: "If anything should happen to Mr. Hale, this money is to be divided equally to his children, Jesse James Hale, Opal Hale and Charity Hale." This typewritten endorsement was signed by Mr. Hale, but was not witnessed. R. B. Hale died on December 9, 1947. On the day before his death, on December 8, 1947, he issued to his daughter, Minnie Turner, appellee herein, a check for $1,000 against this deposit in the bank. This was for the purpose of paying his funeral expenses, hospital and doctors' bills and, according to the testimony of Minnie Turner, if there was anything left over after paying these expenses, she was to keep it. She deposited this check to her credit after the death of her father and when the bank ascertained that Mr. Hale had died before the check was presented for payment, it charged the $1,000 back to the account of Minnie Turner and again credited it to the R. B. Hale account, thus restoring the deposit to the original sum of $3,500. The Bank Josephine, uncertain as to the ownership of the deposit after the death of R. B. Hale, filed this suit to determine its ownership, making parties defendant to that suit the administratrix of R. B. Hale, his daughter Minnie Turner who claimed some interest in it by reason of the check heretofore referred to, Jesse James Hale, Charity Hale, and Opal Hale, who claimed ownership under the terms of the memorandum under which it was deposited. By proper pleadings these claimants set up their respective claims to the fund represented by the deposit and, after submission of the case on the evidence, the Chancellor entered a judgment directing that out of the deposit the bank pay to Minnie Turner the sum of $726 which her evidence showed she had paid out for funeral, medical, and hospital expenses of deceased in reliance on the check he had given her for that purpose before his death. It further adjudged that Margaret Hale, administratrix of the estate of R. B. Hale, was entitled to the remainder of the deposit and directed the bank to turn the balance of $2,822.71 over to her as administratrix. Jesse James Hale, Charity Hale, and Opal Hale prosecute this appeal from that judgment which denied them ownership of the entire deposit, and Minnie Turner cross-appeals from so much

of the judgment as denied her the balance of the $1,000 over and above the $726 allowed her in the judgment.

## What Proof Shows.

It is established by the evidence that R. B. Hale was thrice married. By his first wife he had one child, Minnie Turner, appellee herein. By his second wife, from whom he had been divorced, he had two children, Wayne Hale and Edna Hale, not here involved. By his third wife, Margaret, he had no children. She survived him and is now administratrix of his estate and appellee herein. Not satisfied with these three matrimonial ventures, he "took up" with still another woman, Virgie Castle, and by her he had six children, all, of course, illegitimate. Included among these are appellants Jesse James Hale, age ten, Charity Hale, age six, and Opal Hale, age four, for whom their mother is the duly qualified guardian. Hale bought a small farm about three miles from his home and turned it over to Virgie Castle as her home and she and her children lived there. Hale spent about half of his time at that home and at all times recognized her illegitmate children, including appellants, as his children and supported them and their mother until his death. During his lifetime, he made deeds to tracts of real estate to these children, all in consideration of love and affection, and made money advancements to his legitimate children by his other wives. In December 1946, he sold a tract of land in Floyd County for $3,500 and it was with the proceeds of this sale that he made the deposit here involved. According to the testimony of Virgie Castle, mother of appellants, Bonnie Mae Hale, older sister of appellants, and Roy Hicks, son of Virgie Castle by another man, R. B. Hale told them that he had deposited the $3,500 in the bank for the benefit of the three young children, Jesse, Charity, and Opal, and that he had said, "if anything happens to me I want this money to raise these children on." It is also stipulated that, prior to his death, R. B. Hale deposited a savings account in the Salyersville National Bank in the amount of $2,000 in the names of Opal Hale, Charity Hale, two of appellants herein, and Reuben Hale, age 8, another illegitimate child of R. B. Hale, but not involved in the present litigation.

## The Question Involved.

Appellants concede that the typewritten memoran-

dum on the ledger sheet, heretofore quoted, signed by R. B. Hale but not witnessed by any one, does not meet the formalities required in making a will and they do not claim under it as a will. They also concede that the deposit does not meet the requirements of a gift inter vivos and they do not claim title to the deposit as a gift. The contention of appellants is that the fund involved is a parol trust created in favor of appellants in which R. B. Hale made himself trustee; that it was an irrevocable trust, and that R. B. Hale had no right to draw a check on the fund in favor of Minnie Turner so as to give her title to any part of the fund. Appellees contend that no trust was created in favor of appellants by the deposits and that R. B. Hale retained the right to withdraw any part of the fund as he desired, free of any right of appellants.

### The Law of the Case.

The Kentucky case most similar to the case at bar, and principally relied on by appellees, is that of Turpin's Adm'r v. Stringer, 228 Ky. 32, 34, 14 S. W. 2d 189, 191. In that case Sol Turpin made a deposit in his bank in his own name, as did deceased in the instant case, and at his written direction there was entered on the deposit records of the bank that "if anything should happen to him, or he should die, that said sum was to be paid to [Andy Stringer]." The deposit remained in the bank under these instructions until the death of Sol Turpin, and the administrator of his estate brought suit against Andy Stringer to have it determined that the deposit in question belonged to the estate of decedent and not to Andy. The lower court peremptorily instructed the jury: "You will find for the defendant, Andy Stringer, $2293.75, the amount of the bank account directed to be paid to said Stringer in the event of Sol Turpin's death." On appeal the case was reversed, this Court holding that the instruction of the lower court was erroneous since the alleged instructions given to the bank by deceased operated neither as a valid inter vivos gift of the deposit to the defendant nor was it a testamentary devise, and that the deposit belonged to the estate of deceased and not to defendant. No contention was made there such as is made here, that the fund was deposited by decedent as a voluntary trust for the benefit of those named in the memorandum on the deposit slip. Therefore that

case is authority only for the questions presented and decided therein, that the deposit made by Sol Turpin was not a valid gift inter vivos nor was it a devise under a will, just as it is admitted in the instant case that the deposit was neither.

Harrel's Adm'r v. Harrel, 232 Ky. 469, 23 S. W. 2d 922; Thomas v. Buck, 236 Ky. 241, 32 S. W. 2d 1006; Lacey v. Layne, 190 Ky. 667, 228 S. W. 1; Cincinnati Finance Co. v. Atkinson's Adm'r, 235 Ky. 582, 31 S. W. 2d 890; and Owsley v. Gilbert, 262 Ky. 798, 91 S. W. 2d 513; Frazier v. Hudson, 279 Ky. 334, 130 S. W. 2d 809, 123 A.L.R. 1331; cited and relied on by appellee have little bearing on the question involved here as to whether a trust was created. All that was decided in those cases was that the particular gift involved was not a valid gift causa mortis nor a gift inter vivos nor a testamentary devise nor that under the facts of the particular case, all different from the facts in the present case, a trust was created in favor of a particular person. In the case at bar the situation is different from any of the above cases except that the memorandum placed on the bank ledger at Mr. Hale's direction was in substantially the same language as in the Springer case supra. But in the instant case Hale went further, according to the evidence, which is not contradicted, and went to the house of Virgie Castle, mother of the children, about two days after he made the deposit and told her that he had sold a tract of land and had placed the money in the Bank Josephine for three of the children, Jesse James, Charity, and Opal Hale, for their benefit and, if anything happened to him, he wanted that money for the "raising of the children." She was corroborated in this by the testimony of her oldest daughter, Bonnie, who testified that she heard her father tell this to her mother. Roy Hicks, a son of Virgie Castle, 25 years of age, testified that he returned from Detroit, where he worked, about 30 days after the deposit was made; that he met Mr. Hale at his mother's house and that Hale told him he had sold a tract of land for $3,500 and had placed the money in the Bank Josephine in a savings account for the benefit of the three children, Jesse James, Opal, and Charity; that he was in bad health and they were small and he wanted it held for the "raising of the children." He was not certain whether the deposit was placed in their

names but it was for their benefit. None of this testimony was contradicted. While it is true that Mr. Harkins, chairman of the board and attorney for the bank, testified that if a check, regular on its face and signed by R. B. Hale, had been presented to the bank during his lifetime, it would have been honored, there was no evidence that any instructions were given by Hale to the bank officials concerning the deposit except that contained on the memorandum heretofore referred to. There was nothing to show that he was retaining any right to withdraw the money. His only instruction to the bank officials was that if anything happened to him, he wanted it divided between three of his youngest children. He didn't say that if anything happened to him before he withdrew the deposit he wanted it divided between them. The deposit was in a savings account, which is ordinarily not subject to withdrawal as is a checking account. The deposit remained intact until a year later when he was on his deathbed and a check already filled out was presented to him for his signature by a daughter, Minnie Turner. These facts it seems to us clearly indicate that he put this deposit in the bank specifically for the benefit of his three named children and that he thereby intended to create a trust fund for their use with himself as trustee. Even if he reserved the right to withdraw on the deposit for his own use, of which there is no evidence here, he created a tentative trust enforceable on his death.

The doctrine of tentative trusts, though not heretofore applied in any case in this jurisdiction, has found wide acceptance in most of the jurisdictions in this country. It is succinctly stated in the Restatement of the Law of Trusts, Sec. 58, as follows: ''Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.''

Under comment (b) of the same section, it is stated: ''Revocation of tentative trust. A tentative trust of a savings deposit in a bank can be revoked by the de-

positor at any time during his lifetime, by a manifestation of his intention to revoke the trust. No particular formalities are necessary to manifest such an intention. If he withdraws any part of the deposit during his lifetime, the withdrawal operates as a revocation of the trust to the extent of such withdrawal, and the beneficiary will be entitled only to the amount remaining on deposit at the death of the depositor.''

In 65 C. J., page 293, Sec. 68, speaking of tentative trusts, it is said: ''In some jurisdictions, while it is recognized that a trust in respect of a deposit in bank which is absolute and irrevocable by the donor or depositor may be created, the courts have recognized so-called tentative trusts in respect of such deposits in cases in which usually, if not always, saving deposits or accounts are involved. Whether the trust is tentative or irrevocable depends on the intention of the depositor or donor, determinable as a question of fact. Where the foregoing distinction is recognized, in general a deposit by one person of his own money in his own name as trustee for another, standing alone, creates merely a tentative trust, revocable at the will of the depositor, during his lifetime, becoming absolute and irrevocable on the death of the depositor before the beneficiary without revocation or some decisive act or declaration of disaffirmance, and entitling the beneficiary to the balance remaining at the time of the depositor's death, but not to anything more than such balance; * * *''

In a leading New York case, In re Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900, in upholding a deposit by one person of his own money in his own name as trustee for another, the court used substantially the same language as the excerpt from C. J. quoted above.

In the case of Schauberger v. Tafel, 202 Ky. 9, 258 S. W. 953, 954, involving Building & Loan Association stock, this Court, referring to the Totten case, supra, said:

''Later in Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900, all of the authorities were reviewed and the later doctrine amplified; the court holding that a deposit in a saving bank in the name of the depositor in trust for a third person, *noth-*

*ing else appearing,* was revocable during the life of the depositor, though if under such circumstances he did not revoke it, it would be upheld as a trust after his death.

"We are of the opinion that, where a person purchases and pays for stock of this character, and has the certificate issued to himself as trustee for a third person, retaining the possession and control of the certificate himself, the certificate constitutes *prima facie* evidence of intention to create a trust, but that this may be strengthened or rebutted by the surrounding circumstances, and the attendant as well as subsequent acts and declarations of the parties, and that parol evidence is competent for this purpose."

The principal Kentucky case relied on by appellant is Krankel's Ex'x v. Krankel, 104 Ky. 745, 47 S. W. 1084, 1085. The facts in that case are different from those in the case at bar, but on the question of the enforceability of a voluntary parol trust, this Court had this to say: "The question raised is one which has been the subject of careful consideration by this court and the text writers, and the general doctrine is well settled that a completed parol voluntary trust is enforceable, and, in order to render such a trust valid and enforceable, the donor need not use any technical words or language in express terms creating or declaring the trust, but must employ language which shows unequivocally an intention on his part to create or declare a trust in himself for the donee. It is not essential that the donor should part with the possession in cases where a trust is thus created or declared. If there is a mere intention to create a trust, or a mere voluntary agreement to do so, and the donor contemplates some further act to be done by him to give it effect, the trust is not perfect, and equity will not lend its aid to enforce it. See 2 Pom. Eq. Jur., sec. 997; Barkley v. Lane, 6 Bush 589; Williamson v. Yager, 91 Ky. 282, 15 S. W. 660, [34 Am. St. R. 184]; and Roche v. George's Ex'r, 93 Ky. 609, 20 S. W. 1039. Mr. Perry, in section 99 of his work on Trusts, says: 'Whether the trust is perfectly created or not is a question of fact in each case; and the court determining the fact will give effect to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settler had in view in making the disposition.' "

Other cases cited and relied on by appellant, in addition to those cited in the Krankel case, are McCandless v. McCandless, 111 S. W. 302, 33 Ky. Law Rep. 790, Murphy v. Haynes, 197 Ky. 444, 247 S. W. 362; and Marshall v. Marshall, 156 Ky. 20, 160 S. W. 775, 51 L. R. A., N. S., 1208. While the facts in these cases are not the same as in the present case, they contain language which lends support to appellant's contention that no particular language nor technical words are necessary to create a trust, but that it depends on the facts and circumstances of the particular case, and that trusts in personal property can be created by parol and sustained by parol evidence.

Under all the facts and circumstances of this case as above outlined, we are of the opinion that by the directions given to the bank officials by R. B. Hale in making the deposit and his subsequent actions with reference thereto, he intended to and did set up for the benefit of three of his infant children a tentative trust which was not revoked during his lifetime and that the part remaining on deposit at the time of his death passes to the three named beneficiaries. While there is some testimony that when he gave the $1,000 check to his daughter Minnie on the day before his death, he was in a weakened mental and physical condition, the proof shows that on the faith of this check she actually paid out of her own funds $726 for his medical, hospital and funeral expenses. What these expenses would be was uncertain when he gave the check and there is proof to sustain her contention that he gave her the remainder of the $1,000 for her to keep as her own. We think the proof establishes her right to this balance as a gift from him.

Wherefore the judgment is reversed both on appeal and on cross-appeal with directions to enter one in conformity herewith.