501 P.2d 582

Peter R. SANTA MARIA, Jr., Appellant,

v.

Reynalda SANTA MARIA, Appellee.

No. 2 CA–CIV 1123.

Court of Appeals of Arizona, Division 2.

Oct. 10, 1972.

**314**

Donald C. Premeau, Globe, for appellant.

Sam Lazovich, Miami, for appellee.

HOWARD, Judge.

The plaintiff-husband, Peter R. Santa Maria, was awarded a decree of absolute divorce on June 17, 1971, and has presented only one question for review on appeal. Was it an abuse of discretion to have ordered him to pay alimony?

The facts, considered in the light most favorable to upholding the decision of the trial court, are as follows. Plaintiff and defendant were married on August 5, 1969, and ceased living together as man and wife on or about September 13, 1970, some 13 months after the marriage. At the time of divorce plaintiff and defendant were 20 and 21 years of age respectively, defendant being a few months older than the plaintiff. Defendant was pregnant at the time of the marriage and plaintiff has admitted that he is the father of Stephanie Santa Maria, born February 9, 1970. The divorce decree awarded custody of the minor child to the defendant, subject to reasonable visitation by plaintiff, who was ordered to pay $60 per month for support of

the child. The plaintiff has not objected to the order to pay child support or to the amount thereof.

Prior to and during the marriage, plaintiff was employed on a steady basis by Kennecott Mines. It was established at trial that his approximate net income is $527 per month and that his living expenses are $421.17 per month. The defendant is a high school graduate. She has not been employed since the date of marriage and at the most was employed from one to three months prior to marriage but has no special work skills or educational training.

It appears from the record that the marriage between the parties was not a smooth one from its inception and that there was a failure of communication between them, as well as between the parties and their mutual in-laws. In addition, the record shows that the parties had problems in communicating and sharing their sexual needs and preferences with each other. However, the basic difference leading to the termination of the marital relationship appears to have started when the defendant joined the Jehovah's Witness Church and began to spend time studying the religion and visiting with her mother, also a member of the church. The plaintiff stated at trial that his wife left his home on approximately seven occasions during the marriage to spend time with her mother attending religious conventions, remaining away from three days to a month at different times. In order to demonstrate the crucial part played by the religious differences between the parties, we present part of the plaintiff's testimony relating to a conversation between the couple about a week before the trial on January 26, 1971:

"I told her, 'What do you want? Your religion or me?' and she said I wasn't going to stop her from keeping on with her religion. Then she went inside the house. She said 'good night' and went inside. Then the next day in the morning I talked to her and told her, 'Have you made up your mind? Do you want to come back with me and not keep on

with the religion?' and she said, 'no, she didn't want to' and I told her, 'All right, I'm going to talk to Mr. Premeau and tell him we're going on with the divorce,' and she told me, 'Go ahead and do what you want; I give up on you now.' "

Plaintiff's primary contention on appeal is that since he was the spouse awarded the divorce, the trial court abused its discretion in ordering him to pay his former wife $60 per month permanent alimony, considering that she is in good health and capable of working and that the receipt of alimony places her in a better position than she was in prior to marriage.

■ We are not unmindful of the factors in favor of the plaintiff's position, such as the short duration of the marriage, the age of the parties, and the unlimited nature of the alimony award, and while it is the general rule concerning the granting of alimony where the divorce is awarded the husband that the wife should not be granted permanent alimony, the application of this rule is known to be within the sound discretion of the trial court as to whether it should be adhered to in each case. Henning v. Henning, 89 Ariz. 330, 362 P.2d 124 (1961).

■ The trial court's discretion in awarding alimony is without cavil. Gage v. Gage, 11 Ariz.App. 76, 462 P.2d 93 (1970); Warren v. Warren, 2 Ariz.App. 206, 407 P.2d 395 (1966). The Honorable Robert E. McGhee presided at the hearing below on January 26, 1971, took the matter under advisement and did not rule until April 6, 1971. Considering the trial judge's complete familiarity with the case, unless the award of alimony is excessive or there is a clear abuse of discretion, this court will not substitute its judgment for that of the trial court. Gage v. Gage, supra; Warren v. Warren, supra.

The recent case, Porreca v. Porreca, 8 Ariz.App. 394, 446 P.2d 500 (1968), has concisely stated this court's position concerning alimony:

"In determining what amount should be awarded as alimony the trial court has broad discretion, Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966 (1963), and where there is any reasonable evidence to support the judgment of the trial court, we will not disturb it. Smith v. Smith, 89 Ariz. 84, 358 P.2d 183 (1960). However, the trial court, in the exercise of its discretion, must do so within certain guidelines, and in making an award of alimony there are three broad and basic criteria to be considered. First, the financial needs of the wife, measured by the social position into which her marriage placed her. Second, the ability of the wife to produce income sufficient to sustain her in this status, either by her own labors or as a result of income-producing property which she may own. The third criterion is the financial condition of the husband and his ability to make payments for the support and maintenance of his former wife. . . ." 8 Ariz.App. at 396, 446 P.2d at 502.

■ Applying these criteria to the instant case, we conclude that the grant of alimony to the defendant wife was not an abuse of discretion. She is presently without income and does not possess special employment skills. Since the parties separated she has lived with her parents, paying them $20 per month for room and board, and cannot be said to be in a better social position than she was during marriage. She stated at trial that her primary reason for not seeking employment at this time is that she has an infant to care for. Furthermore, considering her lack of employment skills, if the defendant were to be employed, the hiring and paying of a baby-sitter would place her in no better position than she is in while receiving alimony and child support. The plaintiff is financially able at this time to provide for his child and former wife.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.