506 P.2d 268

Kenneth J. BOURNE, Individually and as Administrator of the Estate of Nola E. Lord, Deceased, and as her son and heir, Appellant,

v.

Lynn H. LORD, a widower, Appellee.

No. 2 CA–CIV 1260.

Court of Appeals of Arizona, Division 2.

Feb. 22, 1973.

May & Dees by Willis R. Dees, Tucson, for appellant.

Edward Aboud, Tucson, for appellee.

HATHAWAY, Chief Judge.

The subject controversy concerns itself with the status of a promissory note and mortgage, the renewal thereof, and the proceeds therefrom. Appellant, administrator of the Estate of Nola E. Lord, deceased, claimed that it was community property of the decedent and appellee, Lynn H. Lord. Appellee's position, on the other hand, was that it was his sole and separate property. The trial court ruled in appellee's favor, hence this appeal.

Appellee and the decedent were married in 1952, at which time appellee owned a section of land in Pima County, together with certain grazing leases. In 1955, appellee entered into an agreement for the exchange of this property (designated sale price $18,455) for a trailer court (sale price $35,000). The agreement recited that the parties agreed to transfer their equities in the respective properties, one for the other, and that appellee agreed to assume and pay the existing mortgages on the trailer court property. These mortgages were therein described as approximately $8,300 each. Appropriate documents were executed by the parties to the transaction. The trailer court deed, however, named Lynn H. Lord and Nola E. Lord, husband and wife, as grantees. Appellee neither directed that the deed be prepared in this form nor did he see it at the time of closing. The escrow agent retained both deeds for recording and they were to be mailed to the respective parties after recording. According to appellee, he never asked for the deed since he took it for granted that it had come in the mail and that his wife had filed it away.

Appellee and his wife took possession of the trailer court and operated it together. In addition, appellee worked evenings at the Panda Steak House. These earnings together with trailer court income, were deposited in one bank account and these funds were used for mortgage payments and the couple's living expenses.

Subsequently, in 1958, appellee arranged to borrow $25,000 to pay off the existing mortgages and other debts. A note and mortgage for the $25,000 was executed by both appellee and his wife. Appellee explained his wife's signature:

"Yes, she signed the mortgage when we borrowed the money, but the only reason why she did was because they said it was the customary procedure for the wife to sign when the husband borrowed money. I told them that was all my property to begin with and nobody else had anything in it except myself . . . ."

The Lords continued to operate the trailer court until 1960 when it was sold to the Golden Pin Investment Company, Inc., an Arizona corporation. The deed was executed by Lynn H. Lord and Nola E. Lord, husband and wife. Consideration for the conveyance was payment of the remaining balance on the $25,000 mortgage, approximately $2,000 in cash, and a promissory note, payable in 180 days in the principal amount of $49,875.14. The note was secured by a mortgage on the property.[1]

Shortly thereafter, Mrs. Lord went to Oklahoma where she lived until her death in 1968. She and her husband corresponded and he sent her certain sums of money. (The record does not reflect the exact amount.) In November, 1960, appellee wrote to his wife and in the letter stated:

"They wouldn't pay anything on the interest until the end of the 180 days, which will be the end of December, and then the stock is supposed to be exchanged for the note. I wish they would pay me my part in cash, or at least part of it."

Appellee's explanation, when asked what he meant by "my part", was:

"Whatever they would give me for the note. Maybe they wouldn't want to pay full value or anything."

In January, 1961, a document addressed to Golden Pin Lanes, Inc. and signed by Lynn and Nola Lord, was delivered to the Golden Pin's attorney. It stated:

"You are hereby instructed and directed to issue that portion of preferred stock of Golden Pinn Lanes, Inc., an Arizona corporation, that we, the undersigned, are entitled to receive in the following manner, to-wit:

One-half to Lynn H. Lord, as his sole and separate property;

One-half to Nola E. Lord, as her sole and separate property."

No stock certificates were ever issued and Golden Pin's attorney testified that he advised appellee to keep his mortgage and forget about the stock because of the corporation's precarious position.

Appellee admitted knowing that his wife's name appeared on all the documents involved in the Golden Pin transaction. He explained that whenever he objected and pointed out that the property was his alone, he was told that it was necessary to have his wife's name included. His "understanding" was that his wife's name was a mere formality.

There was testimony as to a conversation with appellee shortly after his wife left for Oklahoma. According to the witness, appellee told him that he gave his wife one-half to get rid of her. The record reflects that at the time of trial appellee had received almost $15,000 from Golden Pin.

---

1. It appears that stock in a newly formed corporation was to be issued and substituted for the note and mortgage. This did not occur, however, and instead the note was extended and renewed and a December, 1966 extension agreement executed by the Lords and Golden Pin acknowledged that the amount payable to the Lords was $68,192.61.

Appellant claims that one-half of the sums paid to appellee and one-half of the Golden Pin's note and mortgage belonged to the estate of Nola Lord. He predicates his claim of a one-half interest on two theories: (1) that the note and mortgage were community property, or (2) that appellee had made a gift of the one-half interest to the decedent.

Both parties agree that there is a legal presumption that all property acquired by either spouse during coverture takes on a community character. Further, that in order to overcome this presumption, the evidence must be clear, satisfactory and convincing. Appellee had the burden of establishing the separate character of the subject property. In re Harber's Estate, 104 Ariz. 79, 449 P.2d 7 (1969).

The trial court concluded that appellee had sustained his burden of overcoming the presumption that the property was community, and therefore our inquiry is limited to whether there was substantial evidence to support such finding. Campbell v. Campbell, 62 N.M. 330, 310 P.2d 266 (1957). Appellee established that the trailer court was acquired by an exchange of his separate property. There is no evidence whatsoever that any community funds were expended at the time of acquisition. Property acquired after marriage in exchange for property owned before marriage remains separate property. Nace v. Nace, 104 Ariz. 20, 448 P.2d 76 (1968); Flynn v. Allender, 75 Ariz. 322, 256 P. 2d 560 (1953). Appellant places much reliance on the fact, however, that the conveyance of the trailer court was to both husband and wife. Appellee testified, and this is uncontroverted, that the wife's name was inserted neither at his direction nor with his knowledge. The form of the deed therefore did not alter the status of the property as separate. Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948). Recitals in a deed are merely prima facie evidence of ownership and did not preclude the trial court from determining the true status of the property. Jansen v. Jansen, 127 Cal. App. 294, 15 P.2d 777 (1932); Faust v.

Faust, 91 Cal.App.2d 304, 204 P.2d 906 (1949).

Appellant contends that a transmutation of the property from separate to community occurred because of commingling. It is true that where separate and community property are confused or blended so that the separate property cannot be identified, the presumption in favor of the community casts the whole into the community. This principle, however, is not applicable where the identity of separate property is not lost. Guthrie v. Guthrie, 73 Ariz. 423, 242 P.2d 549 (1952).

Appellee admitted that he and his wife maintained only one bank account so presumably the rents and profits from the trailer court were commingled with the community earnings. He additionally admitted that the expenses of the trailer court exceeded its income—consequently it is possible that part of community earnings may have been used for the trailer court. However, the mere commingling of community and separate funds and the use thereof for appellee's separate property did not change the status of the property from separate to community. Schock v. Schock, 11 Ariz.App. 53, 461 P.2d 697 (1969).

Additionally, the fact that Mrs. Lord signed the 1958 note and mortgage, standing alone, did not operate to change the status of the property. Porter v. Porter, supra; 15 Am.Jur.2d Community Property § 57. If, as contended by appellant, community funds were expended on appellee's separate property, namely the trailer court, the community did not thereby acquire an interest in the title of the property itself, but merely had a claim for reimbursement on account of the community funds thus expended. Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893 (1963); Lawson v. Ridgeway, 72 Ariz. 253, 233 P. 2d 459 (1951). If the community was entitled to reimbursement, no evidence in support thereof was presented and therefore such claim fails.

We find no error in the trial court's finding that the note and mortgage

involved in this controversy was appellee's separate property. Appellee's testimony concerning the acquisition of the trailer court was sufficient to support a finding that it was his separate property. 15 Am. Jur.2d Community Property § 57. The trailer court being separate property at the time of its acquisition, and there being no evidence of its transmutation to community property, the proceeds from its sale remained appellee's separate property.

■■■■ Appellee's second theory is one of "gift." His position is that even if the note and mortgage were determined to be the separate property of appellee, he had made a gift of one-half to his wife. In support of this, he points to (1) the document executed in January, 1961, which contains directions to Golden Pin as to issuance of the stock, and (2) the witness' testimony as to appellee stating that he had given half the "proceeds" to his wife to get rid of her. The record does not reflect when this conversation took place, i. e., before or after the written directions as to issuance of the stock. The lower court apparently concluded that this conversation had reference only to the stock, since the original intention of all parties to the Golden Pin transaction was that appellee was to receive stock in the corporation in exchange for the trailer court. Under these circumstances, appellee's reference to "proceeds" could easily be construed as referring to the stock. The lower court concluded that since no stock issued, the attempted gift failed. In order for there to be an executed gift, there must be property *in esse* which is the subject matter of the gift. Betker v. Ide, 335 Mich. 291, 55 N.W.2d 835 (1952); Dickerson v. Snyder, 209 Ky. 212, 272 S.W. 384 (1925); 38 C. J.S. Gifts § 30. The January, 1961 document reflects nothing more than an intention to make a gift. We find no merit in appellant's "gift" theory.

After reviewing the evidence in a light most favorable to support the trial judge's conclusion that the note and mortgage was the separate property of appellee, and giving deference to his opportunity to assess the credibility of the witness, in particular appellee, we find no evidentiary deficiency.

Affirmed.

KRUCKER and HOWARD, JJ., concur.