537 P.2d 624

**Robert W. EVERSON, Appellant and Cross-Appellee,**

v.

**Rosanne P. EVERSON, Appellee and Cross-Appellant.**

**No. I CA–CIV 2624.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 1, 1975.
Rehearing Denied Aug. 13, 1975.
Review Denied Oct. 14, 1975.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by James H. O'Connor and Jolyon Grant, Phoenix, for appellant and cross-appellee.

Wolfe & Harris, P. A. by Sidney B. Wolfe, Phoenix, for appellee and cross-appellant.

## OPINION

JACOBSON, Presiding Judge.

The basic question in this case on appeal is whether the trial court correctly determined that all the assets of the parties were community property and in awarding 50% of these assets to the wife upon dissolution of marriage.

The Eversons married on August 9, 1962. At that time the plaintiff-appellee, Rosanne P. Everson, was 38 and the defendant-appellant, Robert W. Everson, was 37. No children were born of this marriage. Prior to their marriage Robert was an insurance adjuster for State Farm Insurance. In 1955 he also became a licensed building contractor in Arizona, although he did not work full time as a contractor until the early 1960's. While working for State Farm, Robert conceived and planned a drive-in claims office concept for the expeditious handling of automobile insurance claims. This plan was presented to State Farm and in 1960, State Farm authorized the building of one such drive-in claims office. At this time Robert was doing business as Visioneering Construction and Development Co. Subsequently, Robert constructed and leased two additional drive-in claims offices to State Farm in the Chicago, Illinois area. In 1961, Robert incorporated under the name of Visioneering Construction & Development Co., an Arizona Corporation. The

drive-in claims office concept proved highly successful and State Farm authorized the building of such offices on a nationwide basis. Corporations were also formed in Colorado and Illinois prior to marriage and in California, Delaware, Indiana and Nevada after marriage. In 1967 the subsidiary corporations in Colorado, California, Indiana and Nevada were consolidated under the Arizona parent corporation. All the stock in all the corporations formed was issued in Robert's name.

At the time of the marriage Rosanne was an elementary school teacher. In 1966 she became a securities saleswoman. The couple separated in December of 1971 and Rosanne filed for divorce in February of 1972. On October 10, 1973 a decree which dissolved their marriage was entered.

Robert filed his appeal on October 12, 1973 appealing the parts of the decree which ruled that he had not overcome the presumption that certain assets were community property, that these assets be divided equally with the appellee, and that he pay all the community debts. At that same time he filed an application for a supersedeas bond to suspend the execution of the judgment during the pendency of the appeal. On October 23, 1973 the judge signed an order awarding Rosanne $10,000 for attorney's fees to defend the appeal. Robert amended his notice of appeal on November 5, 1973 to include an appeal from this order.

Rosanne filed her notice of cross-appeal on December 10, 1973 appealing the parts of the decree which denied her an award of trial attorney's fees and costs as well as accountant's fees and costs, temporary support and maintenance pending the appeal, and the appointment of a receiver. An amended notice of appeal was filed by Rosanne on March 4, 1974, as the court ordered the supersedeas bond set at $150,000 rather than the $750,000 requested by her.

Pursuant to the decree dissolving the marriage, the judge also distributed the property ordering that 750 of the 1500 shares in Visioneering Construction and Development (hereinafter Visioneering) be transferred to the appellee. Robert contends that all of this stock is his separate property.

A.R.S. § 25–213(A) (1956), the law applicable in this case, defines the husband's separate property as:

"All property, real and personal . . . owned or claimed by him before marriage . . . and also the increase, rents, issues and profits thereof . . . ."

In this case, although there is a dispute as to the value of his investment, there is evidence that the appellant held all the stock in Visioneering of Arizona, Colorado, and Illinois at the time of the marriage. Before the marriage took place some seven drive-in claim centers had been completed or the projects awarded to Robert; by the time of the divorce, some 65 building projects had been completed for State Farm. The value of the Visioneering stock grew over this time from Robert's estimate of $30,000 at the time of marriage to a book value of $554,570 just prior to the divorce.

Robert contends that all of the 1500 shares of the stock in Visioneering is his sole and separate property as these shares represent the increase of his original investment in Visioneering prior to marriage. He argues that the stock was purchased or the corporations funded prior to the marriage or were purchased by him with his separate funds after the marriage. In support of this contention the appellant offered evidence of a separate life style of the parties and also of the use of his separate property to fund later projects.

■ The evidence as to the separate life styles of the spouses was introduced in an attempt to overcome the presumption that all property acquired by either spouse during marriage, whether taken in the husband's or the wife's name is community property. Armer v. Armer, 105 Ariz. 284, 287, 463 P.2d 818, 821 (1970). Robert testified that during the first week of the marriage, the couple orally agreed that

each spouse would keep his own separate accounts. He would use his salary, which is considered to be community property as it is the result of personal efforts, Barr v. Petzhold, 77 Ariz. 399, 409, 273 P.2d 161, 167 (1954), to fund a joint household account to pay rent, utilities and general household expenses. Robert seems to reason that as long as he used his salary to meet household expenditures, any increase realized in the value of the Visioneering investment was his separate property. To substantiate his claim of agreed-upon separate life styles, he offered in evidence two agreements signed by his wife after their marriage. In one of these agreements she forfeited her share of the community property and in the other she acknowledged that the Visioneering stock was her husband's sole and separate property. Rosanne, on the other hand, rebutted the appellant's claim of separate life styles by testifying that she never orally agreed or intended to keep everything separate. She admitted signing the agreements but argued that she understood that she was signing them for tax purposes and was not giving up her share of the community property. In our opinion, the evidence supports the trial court in finding that Robert did not prove the separate character of the entire 1500 shares of stock with his proffered evidence on separate life styles and in this regard, did not meet his burden of overcoming the presumption of community property with clear, satisfactory and convincing evidence to the contrary. Bourne v. Lord, 19 Ariz.App. 228, 506 P.2d 268 (1973).

However, this does not mean that some of the stock should not have been found to be Robert's separate property. Property takes on its character as separate or community at the time of its acquisition. Lawson v. Ridgeway, 72 Ariz. 253, 261, 233 P.2d 459, 464 (1951). Such property retains this separate status, though exchanged during marriage for other property. Davis v. Davis, 9 Ariz.App. 49, 449 P.2d 66 (1969). Therefore, that portion of the stock owned by Robert prior to marriage remained his separate property. The trial court therefore improperly determined that the entire stock was community property. Having determined that the trial court must be reversed on this issue, the following comments are made for guidance of the court and counsel upon remand.

Whether the total value of these 1500 shares of stock is his separate property as an increase and profit of his separate investment depends on whether the increased value is the result of the appellant's individual toils or is from the inherent qualities of the asset itself. Rundle v. Winters, 38 Ariz. 239, 245, 298 P. 929, 931 (1931). The separate aspect is the earnings of the business without Robert's management and the community aspect is that percentage due to the management. In re Torrey's Estate, 54 Ariz. 369, 375, 95 P.2d 990, 992 (1939).

The evidence presented discloses that the value of the Visioneering stock increased in value partially because of Robert's business judgment and management, and partially due to the inherent nature of the business. The trial court must determine what portion is attributable to each factor. See Nace v. Nace, 104 Ariz. 20, 448 P.2d 76 (1969). Moreover, even if the appellant's funds were commingled with the community funds, such as any excess in his salary not used for community expenses, but placed in his separate account this, standing alone, does not change the status of this property from separate to community property. Bourne v. Lord, 19 Ariz.App. 228, 231, 506 P.2d 268, supra. Additionally, the same determination must be made, as to the percentage of the cash and silver accounts held in Robert's name, these assets being interrelated with the issue of the inherent quality of Robert's investment as compared to his toil in enhancing the investment in order to purchase these assets.

The trial court also awarded Rosanne one-half of the cash surrender value

of Robert's life insurance policies. The evidence discloses, however, that one of these policies was purchased in 1953. Since this policy was purchased prior to marriage, it is Robert's separate property and the court's designation of this policy as community property was erroneous. Perry v. Perry, 18 Ariz.App. 299, 300, 501 P.2d 568, 569 (1972). The trial judge must also make a determination whether the premiums for the policies obtained after marriage were paid by separate or community funds using the same analysis used to determine the character of the Visioneering stock, the cash, and the silver accounts.

Rosanne was also awarded 50% of the value of Robert's pension and profit sharing plans. Robert was ordered to transfer cash or property worth 50% of the value of the plans to Rosanne. The testimony disclosed that he had a vested interest of $16,699.62 in the plans at the time of trial. The term "vested interest" applies to that portion of the plan that Robert would be entitled to if he retired at age 65, quit, died or was disabled.

 Pension and profit sharing plans are a mode of employee compensation for services performed, see Le Clert v. Le Clert, 80 N.M. 235, 236, 453 P.2d 755, 756 (1969), so that the portion of the plan earned during coverture is property of the community. Therefore, Rosanne is entitled to one-half the value of these plans which was earned during the marriage. Herring v. Blakeley, 385 S.W.2d 843 (Tex.1965); Miser v. Miser, 475 S.W.2d 597 (Tex.Civ. App.1972). Since the record is unclear as to whether the vested interest of $16,699.62 was entirely earned during marriage, upon remand the trial court is ordered to determine what portion of vested interest was accumulated during marriage and award one-half of that sum to Rosanne. Under the circumstances of this case, we are of the opinion Rosanne should be entitled to her one-half interest immediately rather than at the time Robert or his beneficiary actually receives this "pension". *But see*

Miser v. Miser, 475 S.W.2d 597 (Tex.Civ. App.1972).

 Robert contends that the trial court abused its discretion in awarding Rosanne $10,000 to cover the attorneys fees and costs to defend this appeal. An award to a party for the reasonable fees for prosecution of an appeal is within the trial court's discretion. Reid v. Reid, 20 Ariz. App. 220, 222, 511 P.2d 664, 666 (1973). We find no clear abuse of this discretion and we will not overturn the decision of the trial court.

 Robert also appealed from that portion of the court's decision ordering him to pay the community debts. As this issue was not set forth in the briefs filed by the appellant, the appeal on this matter is deemed to have been abandoned. State v. Scofield, 7 Ariz.App. 307, 310, 438 P.2d 776, 779 (1968).

 In her cross-appeal, the appellee raises various matters for our consideration. First, she argues that the trial court should have appointed a receiver to protect the assets awarded her by the divorce decree. While there is precedence for the appointment of a receiver in a divorce case, *see* Ackel v. Ackel, 57 Ariz. 14, 110 P.2d 238 (1941), the trial court did not abuse its discretion by not ordering such an appointment in this case. D & S Farms v. Producers Cotton Oil Co., 16 Ariz.App. 180, 182, 492 P.2d 429, 431 (1972).

 Second, the appellee urges that she should have been awarded temporary alimony and support during the pendency of this appeal. Any award of alimony and support for a wife is within the sound discretion of the trial court. Day v. Day, 20 Ariz.App. 472, 473, 513 P.2d 1355, 1356 (1973). The evidence in this case shows that the appellee was physically able to work and was employed as a securities saleswoman at the time of the divorce. Under the circumstances present in this case, there is no evidence that the trial court acted arbitrarily in denying the

award. *See* Santa Maria v. Santa Maria, 18 Ariz.App. 313, 315, 501 P.2d 582, 584 (1972).

As her third assignment of error, the appellee contends that the trial court erred in not awarding her attorney's fees and costs as well as accountant's fees and costs at the trial level. The award of such fees as with fees on appeal is a matter within the discretion of the trial court. At the time the trial judge denied Rosanne trial attorney's fees, he had also awarded her a substantial amount of money in his division of the community property which would more than pay for attorney's fees. Spector v. Spector, 23 Ariz.App. 131, 531 P.2d 176, 188 (1975). In this case we find no abuse in the court's failure to award the appellee these fees and costs. Reich v. Reich, 13 Ariz.App. 98, 99, 474 P.2d 457, 458 (1970). After the division of the community property, Robert filed a supersedeas bond denying Rosanne access to these funds pending appeal, hence our determination that the award of attorney's fees on appeal was proper.

The appellee's fourth, and final, matter raised in her cross-appeal involves the sufficiency of the supersedeas bond filed by the appellant. A supersedeas bond of $150,000 was filed by the appellant as required by the court although the appellee had requested that this bond be fixed at $750,000. The supersedeas bond needs to be large enough to give assurance that payment of all damages that might be sustained by the stay of proceedings will be made. Solove v. Tang, 104 Ariz. 291, 292, 451 P.2d 872, 873 (1969). The bond in this case is large enough to provide such assurance to the appellee so that it will not be disturbed on appeal.

For the foregoing reasons, this case is remanded to the trial court for a determination of the portion of the assets attributable to the community and separate aspects; the award of 50% of the insurance policy purchased before marriage is reversed and on remand the trial court is to determine the community or separate character of the remaining insurance policies; the award in the pension and profit-sharing plans is reversed and remanded for a determination of the vested interest acquired during marriage and an award made accordingly; the award of fees and costs on appeal is affirmed; the issues raised on the cross-appeal are all affirmed.

HAIRE, C. J., and EUBANK, J., concur.