722 P.2d 230

**Opal N. CARPENTER,
Plaintiff-Appellee,**

v.

**Sandra CARPENTER,
Defendant-Appellant.**

No. 18111–PR.

Supreme Court of Arizona,
En Banc.

June 2, 1986.

Patten, Montague & Arnett by W. Dea Montague, Tempe, for plaintiff-appellee.

Allen, Kimerer & LaVelle by Robert H. Allen, Phoenix, for defendant-appellant.

HOLOHAN, Chief Justice.

This suit concerns the disposition of a death benefit which became payable upon the death of John R. Carpenter, a longtime employee of the City of Mesa. John's former wife Opal sought a share of the death benefit. The superior court granted judgment to Opal awarding her the proceeds of the group life insurance policy on the life of John and one-half of the value of John's retirement account as of the date of the dissolution of the marriage of John and Opal on September 27, 1974. The trial court also awarded Opal $6000 in attorney's fees. The value of the death benefit after September 27, 1974 and one-half the value of the pre-September 27, 1974 death benefit were awarded to Sandra, John's second wife.

On appeal the Court of Appeals held that Opal had no right to any share of John's retirement fund death benefit, but she should receive the proceeds of the life insurance policy which John was obligated to have maintained for her benefit under the decree of dissolution. The appellate court also reversed the award of attorney's fees to Opal. *Carpenter v. Carpenter*, 150 Ariz. 130, 722 P.2d 298 (App.1985).

The material facts are undisputed. John and Opal Carpenter were married from October 9, 1937 until September 27, 1974. John Carpenter worked for the City of Mesa from June 1951 until his death on May 20, 1981. John and Sandra married on February 13, 1981 and remained married until John's death.

Opal and John's dissolution decree incorporated by reference a property settlement agreement the pair entered into on June 21, 1974. The agreement provided among other things that Opal remain the beneficiary of John's group term life insurance policy carried by the City of Mesa or under like coverage obtained elsewhere. Before his death, John named Sandra the beneficiary of the term life insurance policy.

John also participated in the Arizona State Retirement System (ASRS) from February 1963 until he died. ASRS is a contribution plan, with benefits based upon and accumulated from employee salary deductions and employer contributions. A.R.S. §§ 38–748, –749; *see generally* A.R.S. §§ 38–741, –781.37. Neither the property settlement nor their dissolution decree mentions John's accumulated state retirement fund benefits; neither contains any provision purporting to dispose of community assets not specifically described.

John had named Opal as his beneficiary under ASRS from February, 1963 until June 1977. Sandra became John's beneficiary in January of 1979.[1] A.R.S. § 38–781.11 provides that should an ASRS participant die prior to retirement, the participant's named beneficiary will receive a death benefit according to a set formula. Like retirement benefits, the death benefit accumulates from salary deductions and employer contributions.

We granted Opal's petition for review. Sandra did not seek review of the Court of Appeals decision to award the proceeds of the life insurance policy to Opal.

The two issues presented for review are whether Opal had a community interest in John's retirement fund death benefit and whether she was entitled to the award of attorney's fees in the superior court. We approve the appeals court decision to reverse the award of attorneys' fees and to remand for a reconsideration of that award by the trial court. The Court of Appeals correctly noted that Opal is only entitled to

attorneys' fees for the portion of the judgment awarding her the life insurance proceeds, as it arose out of a contract. A.R.S. § 12–341.01. Opal's retirement fund death benefit claim did not arise out of a contract. To determine an appropriate award of attorneys' fees on remand, the trial court should consider what proportion of the case was contract-based and how much of it concerned other issues.

We took review to address only the issue whether Opal had a community property interest in her former husband's Arizona State Retirement System death benefit even though their 1974 decree of marital dissolution predated *Everson v. Everson?* 24 Ariz.App. 239, 537 P.2d 624 (1975).

### *Retirement Benefits as Community Property*

John Carpenter's ASRS retirement pension was a contributory pension, based upon and accumulated from salary deductions and employer contributions. A.R.S. §§ 38–748, –749. The Arizona courts recognized that contributory plans were community property as early as *Warren v. Warren,* 2 Ariz.App. 206, 407 P.2d 395 (1965). *Warren* stated that a spouse's "contributions [to an employee stock plan] prior to divorce consisted in [sic] deductions from his salary, which certainly qualifies as community property;" *Id.*, 2 Ariz.App. at 207–08, 407 P.2d at 396–97. Community property, including contributory financial plans, is subject to division by the court. *Id.; see also Koelsch v. Koelsch,* 148 Ariz. 176, 713 P.2d 1234, 1239 (1986); *Johnson v. Johnson,* 131 Ariz. 38, 41, 638 P.2d 705, 708 (1981).

John and Opal's property settlement agreement and their dissolution decree did not dispose of his ASRS pension benefits. The record does not disclose why the pair made no provision at the time of divorce for the pension plan. Because the parties do not urge an outside agreement to clarify

---

1. Because the intermediate beneficiary does not assert any share of the benefit, we need not determine the disposition of that share.

the omission, however, we need not address what motivated it. Although the property agreement declares "[a]ny and all property acquired by either of the parties hereto from and after the date hereof shall be the sole and separate property of [that party]," it does not provide for disposition of uncatalogued or undisposed of community property.

Despite their failure to dispose of the pension in the property settlement, the portion of John's ASRS retirement benefit earned up until John and Opal's marital dissolution is nevertheless community property. Therefore, Opal remains entitled to a share of the pension's value at that time. The parties agreed that the value as of that September date was $16,197.11.

John and Opal's marital dissolution occurred in 1974. Sandra advances the argument that it is against public policy for Opal to reopen or reexamine her divorce decree and property settlement with John. Sandra cites *Reed v. Reed*, 124 Ariz. 384, 604 P.2d 648 (App.1979), and *Guffey v. LaChance*, 127 Ariz. 140, 618 P.2d 634 (App.1980) as the controlling authority on the issue. The Court of Appeals agreed with Sandra's position.

At the outset it is important to recognize the distinction between two types of pension plans which figure in the community property analysis. On the one hand, contributory pension plans accrue from employee salary deductions and employer contributions. At any given time an employee may ascertain his or her "balance" of contributions in the plan. On the other hand, noncontributory pension plans do not accumulate from deductions from the employee's salary or compensation.

Both *Reed* and *Guffey* involved noncontributory military pensions. Military pensions differ from contributory pensions in that they do not accrue directly from salary deductions. This court held that military pensions are community property in *Van Loan v. Van Loan*, 116 Ariz. 272, 273, 569 P.2d 214, 215 (1977), but prior to *Van Loan* noncontributory, military pensions had not

been considered community property in this jurisdiction.

*Van Loan* extended the principle that *contributory* pensions are community property to include *noncontributory* plans, which are earned by community labor rather than by contribution of community funds. Adopting the reasoning of the California Supreme Court in *Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976), *Van Loan* held that "to the extent that such a property right [in a non-vested, non-contributory pension plan] is earned through *community effort*, it is properly divisible by the court upon dissolution of the marriage." 116 Ariz. at 274, 569 P.2d at 216 (emphasis added).

*Everson v. Everson*, 24 Ariz.App. 239, 537 P.2d 624 (1975), in contrast to *Van Loan*, was not a case which radically altered Arizona community property law. The *Everson* case concerned a property settlement on marital dissolution. The court included the husband's pension and profit-sharing plans among the divisible community assets. Ten years before, *Warren v. Warren, supra,* had recognized that contributory stock and pension plans, as forms of deferred compensation, are community property. Thus *Everson* did not suddenly give the courts the power to divide that type of property upon dissolution of marriage. *Everson* simply made that power explicit.

*Van Loan* and *Everson* stand for similar propositions, but the cases are distinguishable. *Everson* acknowledged that accumulations in pension funds, as deferred compensation, are judicially divisible community property; *Van Loan* extended divisible community property to include noncontributory pension plans. This distinction is important in examining *Reed* and *Guffey*.

*Reed v. Reed* involved an appeal from a trial court holding that the wife had a community property interest in one-half the military pension her husband had earned during their marriage. Division Two of the Court of Appeals reversed, pointing out first that the Reeds' final decree had predated *Everson v. Everson* and *Van Loan*

*v. Van Loan.* The *Reed* court declared that although *Everson* held that the portion of pension plans earned during marriage is indeed community property, *Van Loan* was the first square holding that "non-vested military benefits attributable to community effort are community property." *Reed,* 124 Ariz. at 385, 605 P.2d at 649. Because *Everson* and *Van Loan* were decided after the Reeds' final decree, the *Reed* court refused to apply the ruling retroactively.

The court in *Reed* relied on public policy which favors finality of divorce decrees.

> "There is a compelling policy interest favoring the finality of property settlements. *Peste v. Peste,* 1 Wash.App. 19, 459 P.2d 70 (1969). This policy interest would be greatly undermined if the court were to create the potential for *reexamination of every military divorce* prior to *Everson* and *Van Loan.*"

*Id.,* 124 Ariz. at 385, 604 P.2d at 649 (citation omitted, emphasis supplied).

*Guffey v. LaChance, supra,* involved a wife's petition to modify her 1969 divorce decree to include her husband's undisposed-of military retirement pension. The former Mrs. LaChance based her argument on the applicability in 1969 of later-repealed A.R.S. § 25–318(D) (corresponding to current subsection (B)).[2] The statute would have required unprovided-for community property to be treated as tenancy-in-common property, entitling her to one-half of the pension. The *Guffey* court recounted but disregarded this argument, basing its holding instead on the finality of property settlements reasoning of *Reed.* The court in *Guffey* also refused to give "retrospective effect" to "the rule in *Van Loan* that the community acquires a property right in unvested pension benefits ..." *Id.,* 127 Ariz. at 142, 618 P.2d at 636.

The courts in *Reed* and *Guffey* were justified in not giving *Van Loan* retrospective effect. They were wrong, however, to hail *Everson* as a groundbreaking decision rather than the logical heir to an older, different community property concept; unlike *Van Loan, Everson* did not require special retrospective application, as its holding was consistent with extant law. Thus, even though John and Opal's dissolution decree preceded *Everson,* his accumulated pension benefits earned during their marriage were considered community property.

John's ASRS pension plan was a contributory pension plan. Unlike those in *Van Loan, Reed* and *Guffey,* John's deferred salary, and not his "efforts," went directly into the coffers of the retirement system. Even before *Van Loan* made noncontributory pensions subject to equitable distribution upon marital dissolution, John and Opal's community had a cognizable property interest in his contributory pension plan. Opal did not receive her share of the value of John's pension at the time of their dissolution decree in 1974. She was entitled to receive that share from the death benefit payable upon John's death. The judgment of the superior court awarding Opal one-half the value of John's ASRS pension as of the date of their marital dissolution is affirmed. The decision of the Court of Appeals reversing the award of benefits to Opal is vacated. In all other respects the decision of the Court of Appeals is approved, and the case is remanded to the superior court for further proceedings consistent with this opinion.

GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

CAMERON, Justice, dissenting.

I agree with the opinion of the court of appeals, *Carpenter v. Carpenter,* 722 Ariz. 298, 719 P.2d 291 (App.1985).

---

2. A.R.S. § 25–318(B) reads in full:

  B. The community, joint tenancy and other property held in common for which no provision is made in the decree shall be from the date of the decree held by the parties as tenants in common, each possessed of an undivided one-half interest.