NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

THERESA M. OLSON, *Petitioner/Appellee/Cross-Appellant*,

*v.*

THOMAS R. OLSON, JR., *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 19-0300 FC
FILED 6-4-2020

Appeal from the Superior Court in Maricopa County
No. FN 2017-091406
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

COUNSEL

Scott L. Patterson PLLC, Tempe
By Scott L. Patterson
*Counsel for Respondent/Appellant/Cross-Appellee*

Davis Miles McGuire Gardner PLLC, Tempe
By Douglas C. Gardner
*Counsel for Petitioner/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kenton D. Jones and Judge D. Steven Williams joined.

---

**B R O W N**, Judge:

¶1        Thomas Olson Jr. ("Husband") appeals from the superior court's decree of dissolution of his marriage to Theresa Olson ("Wife"). He argues the court erred in characterizing an insurance policy as community property and by finding it was equitable to divide the policy's cash value as an offset for Wife's separate property contribution to jointly-owned property. He also challenges the court's denial of his post-trial motions addressing those issues.[1] For the following reasons, we affirm.

**BACKGROUND**

¶2        Husband and Wife were married in May 2007 in Indiana. In 2003, Husband purchased a home in Indiana, and title was later transferred into both Husband and Wife's names. Eventually the parties decided to sell the Indiana home, intending to use the proceeds for a down payment on a home in Scottsdale, Arizona. However, because the Indiana home took longer to sell than anticipated, Husband and Wife each contributed their separate funds for the down payment on the Scottsdale home: Husband obtained a loan from the cash value of his Northwestern Mutual Life Insurance policy ("Northwestern policy") in the amount of $64,000, and Wife withdrew roughly $31,000 from her money market account.

¶3        Husband obtained the Northwestern policy before the marriage as his sole and separate property. During the marriage, Husband paid a portion ($2,983.47) of the policy premiums with community funds. He paid the remaining premiums with the cash value of the policy, which Wife does not dispute. After sale of the Indiana home, Husband repaid the loan from his Northwestern policy, plus interest, but Wife was not repaid the funds she contributed toward the down payment on the Scottsdale

---

[1]        Wife filed a cross-appeal relating to the trial court's distribution of debts; however, she concedes that issue is moot.

home. The parties dispute whether there was an agreement that Wife would be reimbursed for her $31,000 contribution.

¶4 Wife filed for dissolution in May 2017. In the joint pretrial statement, Wife asserted she should be awarded half of any community portion of the Northwestern policy, but Husband claimed it was his sole and separate property. At trial, both Husband and Wife testified as to the amount of Wife's contribution to the down payment for the Scottsdale home, and Wife testified the parties agreed to reimburse Wife's contributions as well as repay Husband's loan.

¶5 In its decree, the superior court found in part that after allocation of the real and personal property, it was appropriate to give Wife an offset of $20,014.14, which accounted for half the cash value of the Northwestern policy in the amount of $43,964.79, but subtracted additional offsets granted to Husband that are not relevant to this appeal. In doing so, the court determined the cash value of the insurance policy was community property, given that "during the marriage premiums were paid with community funds" and the offset was "equitable in light of Wife's separate property portion of the down payment made on [the Scottsdale] home not being reimbursed upon the sale of the Indiana home." The court also directed Husband to reimburse Wife $30,000 for a portion of her attorneys' fees, plus $1,216.50 in costs.

¶6 Husband then filed motions to alter/amend and clarify the decree. In particular, Husband argued the Northwestern policy was his sole and separate property and that no portion of the policy should be equalized upon dissolution. Husband also argued that Wife did not raise the issue of reimbursement for her separate contribution to the Scottsdale home in the joint pretrial statement, nor did she support her claim with exhibits during the trial. In ruling on the motion, the court clarified that by determining the policy should stay in Husband's name, it was awarding the policy "as [Husband's] sole and separate property," but that the cash value was community in nature and half of it should be accounted for on equalization. The court otherwise denied Husband's remaining arguments, and this timely appeal followed.

**DISCUSSION**

¶7 We review the trial court's distribution of property for an abuse of discretion, but we review the classification of property as separate or community de novo. *Bell-Kilbourn v. Bell-Killbourn*, 216 Ariz. 521, 523 (App. 2007). We view the evidence in the light most favorable to upholding

the trial court's decision and will not disturb factual findings unless clearly erroneous. *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012). "We will defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). Further, we may affirm for any legal reason supported by the record. *Pettit v. Pettit*, 218 Ariz. 529, 531, ¶ 4 (App. 2008).

¶8 In dividing marital property at dissolution, courts must "assign each spouse's sole and separate property to such spouse" and "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind." A.R.S. § 25-318(A). All property acquired during marriage is presumed to be community property, except property a spouse acquires by gift, devise, or descent. A.R.S. § 25-211(A). Generally, all community property "should be divided substantially equally unless sound reason exists to divide the property otherwise." *Toth v. Toth*, 190 Ariz. 218, 221 (1997).

¶9 Property acquired before the marriage is generally considered separate property. *See* A.R.S. § 25-213(A). Property obtains its character depending upon the marriage status of the owner upon acquisition, and the property's status continues until changed by agreement of the parties or operation of law. *Potthoff v. Potthoff*, 128 Ariz. 557, 561 (App. 1981). Nevertheless, "the profits or the increase in value of that property during marriage . . . may become community property as a result of the work effort of the community." *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979).

¶10 "In determining an equitable division, the family court has broad discretion in the specific allocation of individual assets and liabilities." *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 14 (App. 2010) (citation omitted). Under A.R.S. § 25-318(C), consideration may be given to (1) excessive or abnormal expenditures and (2) the destruction, concealment, or fraudulent disposition of property. "But the family court's attempt to achieve an equitable division is not limited by these statutory factors; instead, the court may consider other factors that bear on the equities of a particular case." *Flower*, 223 Ariz. at 535, ¶ 14. "In balancing such equities, courts might reach different conclusions in similar cases without abusing their discretion." *Id.* Thus, we will not disturb a court's ruling absent a clear abuse of discretion. *Gutierrez*, 193 Ariz. at 346, ¶ 5.

¶11 Husband argues the cash value of the Northwestern policy is his sole and separate property and should not have been equalized upon dissolution. Husband acquired the policy long before the marriage, and because no operation of law or agreement of the parties has converted the

policy itself to community property, it is separate property. The superior court's findings regarding the policy are unclear as to whether the property was categorized as separate or community property. To the extent the court did not initially categorize the property as separate, the court erred, as it should have clarified that the policy was Husband's sole and separate property throughout the marriage. The court should have also found that Wife's only right to a portion of the policy's cash value depended on whether the increase during the marriage occurred at least in part because of community efforts. Thus, the court erred in finding that the entire cash value of the policy was community property, given that the policy's approximate value was $50,000 when the parties married. We may still affirm, however, if the court's ruling did not affect Husband's right to receive an equitable distribution of property. *See* Ariz. R. Fam. Law P. 86 ("Unless justice requires otherwise, an error . . . by the court . . . is not grounds for . . . disturbing a judgment" and a court "must disregard all errors and defects that do not affect a party's substantial rights.").

**¶12**      In support of his argument that the cash value of the Northwestern policy should not have been accounted for on equalization, Husband argues that *Everson v. Everson*, 24 Ariz. App. 239 (1975), stands for the principle that a life insurance policy, purchased before the marriage and considered separate property, can only be accounted for upon dissolution if the community payments on the policy cause an increase in the cash value of the policy. But this misconstrues *Everson*. In that case, two life insurance policies were at issue, one purchased before the marriage and one after. *Id.* at 244. The court determined the life insurance policy purchased before the marriage was separate property and should not have been categorized as community property by the trial court. *Id.* On remand, we instructed the trial court to determine "whether the premiums for the *policies obtained after marriage* were paid by separate or community funds." *Id.* (emphasis added). Thus, nothing in *Everson* alters what we have held elsewhere—an increase in value of separate property due to the effort of the community may convert a portion of the value of that property to community property. *See Cockrill*, 124 Ariz. at 52.

**¶13**      The parties do not contest that community funds in the amount of $2,983.47 were used to pay a portion of the premiums on the life insurance policy. Husband argues the premiums went toward the death benefit only. But the record before us does not definitively establish that point, and Husband concedes that "the Northwestern Mutual records do not specifically state that they are for a death benefit only." He argues nonetheless that his trial testimony establishes "the premium payments during the marriage were for a death benefit only," but cites nothing in the

record to support this argument. Husband's assertions, without more, are insufficient to establish this fact. *See* ARCAP 13(a)(7). Moreover, it was the superior court's role to evaluate the credibility of Husband's testimony on this point, and the court's distribution of property is necessarily predicated on a determination that the premiums paid increased the cash value. *See Gutierrez*, 193 Ariz. at 347, ¶ 13. In any case, Husband has not shown that the court's overall property division was an abuse of discretion because the record before us does not clearly illustrate how the increase in the cash value occurred.

**¶14** Though the superior court arguably erred in basing its equalization finding on the community funds used to pay the premiums of the Northwestern policy and attendant cash increase, the court also relied on the fact that Wife was not repaid for her $31,000 down payment on the Scottsdale home. It was within the court's discretion to consider the down payment in dividing the parties' property interests. Husband suggests Wife's claim that the couple agreed to reimburse Wife's down payment should have been precluded because it was not included in the joint pretrial statement. *See Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (App. 2007) (noting that a joint pretrial statement controls the subsequent course of the litigation). However, "division of an asset is not automatically waived when one or both of the parties fails to list the asset in a pretrial statement, if exhibits are admitted and testimony regarding the asset is given at trial." *Nold v. Nold*, 232 Ariz. 270, 274, ¶ 20 (App. 2013) (distinguishing *Leathers*). Thus, Wife's claim was not precluded. Though Husband argues Wife's testimony was not supported by exhibits, we do not reweigh evidence on appeal. We therefore presume the court found Wife's testimony more credible on the issue of whether the parties had agreed she would be reimbursed for her down payment on the Scottsdale home.

**¶15** Husband argues the superior court erred in using the policy's cash value as the mode for equalizing property distribution. The primary question, however, in addressing the court's distribution of property, is whether Wife was entitled to a reimbursement of her $31,000 down payment. Because the court found Wife's testimony on this point credible and persuasive, Wife was entitled to a reimbursement. To be sure, the decree of dissolution creates confusion because it combined the questions of Wife's down payment on the Scottsdale home and the community interest of Husband's separate Northwestern policy. Nonetheless, the court's decision properly focused on attempting to divide property and allocate the debts in an equitable manner. In doing so, the court exercised its discretion in determining how to line up the many different figures on each side of the ledger.

**¶16** Finally, in arguing the superior court should not have accounted for Wife's equitable claim, Husband cites *In re Marriage of Inboden*, 223 Ariz. 542, 545, ¶ 11 (App. 2010). But *Inboden* stands for the proposition that jointly held property may be divided unequally in certain circumstances. *Id.* Here, the court was empowered to consider other "relevant factors" and had broad discretion to determine what distribution of property was equitable under the unique circumstances of this case. *Id.* at 544–45, ¶¶ 7, 9, 11. For example, Husband borrowed $64,000 from the cash value of the Northwestern policy to pay a portion of the Scottsdale house down payment. The loan was paid back with community funds—proceeds from the sale of the Indiana home—and Husband earned 8% interest on the loan in the amount of nearly $9,000. Not only did Wife not receive interest on her down payment, but she also was not repaid any principal. That evidence was but one of several factors the court could properly consider in deciding an appropriate equalization of the parties' property interests. We conclude the court acted within its discretion when it accounted for the equitable nature of Wife's claims relating to the community's interest in the insurance policy's cash value and her personal property interest in the $31,000 used toward the purchase of the Scottsdale home.

## CONCLUSION

**¶17** We affirm the trial court's distribution of property upon dissolution. In our discretion, we deny both parties' requests for attorneys' fees made pursuant to A.R.S. § 25-324, but award taxable costs to Wife subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA